[No. D003008. Fourth Dist., Div. One. Feb. 18, 1986.]

ROBERT WALLACE, Plaintiff and Respondent, v.
FARMERS INSURANCE GROUP, Defendant and Appellant.

**COUNSEL**

Wingert, Grebing, Anello & Chapin and Randall L. Winet for Defendant and Appellant.

Eugene A. Hooser for Plaintiff and Respondent.

## OPINION

**STANIFORTH, Acting P. J.**—Defendant Farmers Insurance Exchange[1] appeals from an order denying its petition to compel arbitration. (Code Civ. Proc., § 1294, subd. (a).)

Plaintiff Robert Wallace was the insured under an automobile liability insurance policy written by Farmers, furnishing uninsured motorist coverage (see Ins. Code, § 11580.2) and providing for arbitration of disputes thereunder.

On April 27, 1984, plaintiff while standing on a road shoulder by his disabled vehicle was struck by a motor vehicle operated by one Lourdes V. Bermal. Bermal was insured by a State Farm automobile insurance policy with third party limits of $50,000. Wallace was insured by a Farmers' policy whose uninsured motorist provisions had limits of $30,000 per person and $60,000 per accident. The bodily injury liability limits of the policy were $100,000/$300,000. Wallace's wife had an identical policy separately paid for. Claiming that his damages exceeded the $50,000 limits of Bermal's policy, Wallace on January 22, 1985, filed a declaratory relief complaint against his insurer, Farmers, seeking to establish coverage under the uninsured motorist provisions of his policy. Wallace contended (1) he was entitled to "stack" the two policies of himself and his wife, (2) the uninsured motorist limits under each policy were $100,000 rather than $30,000 because he did not sign a waiver to have uninsured motorist coverage limits lower than liability limits. (See Ins. Code, § 11580.2, subds. (a)(1) and (m).) Accordingly, he claimed $200,000 in automobile insurance coverage.

Responding to the complaint, Farmers moved to compel arbitration. Although Wallace had himself earlier requested arbitration (on Nov. 1, 1984), he resisted Farmers' motion claiming waiver of arbitration, laches, and, finally, that the insurance contract was obscure and vague and did not agree to arbitrate the particular dispute. The trial court ruled that Part II, paragraph 3b of the policy regarding the definition of "underinsured" is unclear and as a result there was no agreement to arbitrate underinsured motorist situations.

The paragraph of the policy held to be unclear in the trial court is that defining "uninsured motor vehicle." Paragraph 3b includes in that defini-

---

[1]The pleadings name the defendant "Farmers Insurance *Group*." The answer alleges Farmers Insurance *Exchange* was erroneously sued as "Group." The policy in issue is labeled "Group" but also refers internally to "Exchange." We will perpetuate the caption used below and avoid any further fuss by the expedient of referring to defendant as "Farmers."

tion a motor vehicle which is "insured by a bodily injury liability bond or policy at the time of the *accident* which provides coverage in amounts less than the limits of Uninsured Motorist Coverage shown in the Declarations." (Original italics.) This section appears quite clearly to identify, for purposes of uninsured motorist coverage under the policy, underinsured vehicles, i.e., vehicles insured for less than the amount of the policyholder's uninsured motorist coverage. As Farmers points out, in a statute passed effective July 1, 1985, the California Legislature has elected to define underinsured motor vehicle in precisely this manner: " 'Underinsured motor vehicle' means a motor vehicle that is an insured motor vehicle but insured for an amount that is less than the uninsured motorist limits carried on the motor vehicle of the injured person." (Ins. Code, § 11580.2, subd. (p)(2).)

■ The trial court found ambiguity consisting in the definition of "underinsured." With this conclusion, we cannot agree. As stated, the policy clearly provides, in language similar to that later used legislatively for the same purpose, that the term "uninsured motor vehicle" includes "underinsured" vehicles, that is, vehicles insured for less than the amount of the insured's uninsured motorist coverage. The arbitration provisions apply to disputes regarding uninsured motorist coverage. Since by definition uninsured includes underinsured, arbitration of uninsured motorist coverage issues must include issues involving underinsured vehicles. Not only would any other result be absurd and result in a strained reading of the policy, but also might well redound to the disadvantage of policyholders in other cases, seeking the benefits of their uninsured motorist coverage for situations of underinsurance. In fact, Wallace here himself believed arbitration was suitable and sought that remedy before filing suit.

We consider the scope of the agreement to arbitrate here. References to arbitration are found in two places in the policy. First, after stating the general scope of uninsured motorist coverage, the policy says: "Determination as to whether an *insured person* is legally entitled to recover *damages* or the amount of *damages* shall be made by agreement between the *insured person* and us. If no agreement is reached, the decision will be made by arbitration." (Original italics.) Later, at the end of the section describing uninsured motorist coverage appears the heading "Arbitration," providing in pertinent part: "If an *insured person* and we do not agree (1) that the person is legally entitled to recover *damages* from the owner or operator of the *uninsured motor vehicle,* or (2) as to the amount of payment under this Part, either that person or we may demand that the issue be determined by arbitration." (Original italics.) This statement is followed by four paragraphs detailing the procedure for invoking and engaging in arbitration. Among other things, this part of the policy provides: "The arbitrator shall determine (1) the existence of the operator of an *uninsured motor vehicle,*

(2) that the *insured person* is legally entitled to recover *damages* from the owner or operator of an *uninsured motor vehicle,* and (3) the amount of payment under this Part as determined by this policy or any other applicable policy." (Original italics.)

 California Insurance Code section 11580.2, subdivision (f), regarding uninsured motorist coverage mandates arbitrability of "whether the insured shall be legally entitled to recover damages, and if so entitled, the amount thereof, . . ." The statute applies to the rights of the insured vis-à-vis the uninsured motorist. Numerous cases have held that insurance agreements to arbitrate are not restricted to the statutory language; "narrow" provisions which track the statutory language are interpreted to require arbitration only of rights against the uninsured motorist, but "broad" provisions which agree to arbitrate other issues are enforced as any other valid contract, to require arbitration of that which the parties agreed to arbitrate. (*Freeman* v. *State Farm Mut. Auto Ins. Co.* (1975) 14 Cal.3d 473, 481 [121 Cal.Rptr. 477, 535 P.2d 341]; *Pelger* v. *California Casualty Indemnity Co.* (1980) 104 Cal.App.3d 861 [163 Cal.Rptr. 891], and cases there cited; *Hartford Accident & Indemnity Co.* v. *Jackson* (1983) 150 Cal.App.3d 111, 114-115 [197 Cal.Rptr. 477]; see also *Van Tassel* v. *Superior Court* (1974) 12 Cal.3d 624 [116 Cal.Rptr. 505, 526 P.2d 969].) *Pelger* involved a "broad" provision which provided for arbitration of a dispute "'as to the amount payable hereunder,'" language nearly identical to the language in the policy here—"the arbitrator shall determine . . . (3) the amount of payment under this Part as determined by this policy . . . ." Clearly, then, the policy provision here is broader than the statute, and requires arbitration of issues other than the uninsured motorist's liability.

Several California cases have considered the arbitrability of various kinds of disputes under "broad" arbitration agreement provisions similar to that here. (They are collected in Annot. (1970) 29 A.L.R.3d 328, 354 et seq., § 17.) Issues found arbitrable under such provisions include whether there was physical contact between the vehicles of the insured and the uninsured motorist (*Orpustan* v. *State Farm Mut. Auto Ins. Co.* (1972) 7 Cal.3d 988 [103 Cal.Rptr. 919, 500 P.2d 1119]); whether the claimant was an insured under the policy, depending on whether the decedent was a member of the insured's household (*Van Tassel* v. *Superior Court, supra,* 12 Cal.3d 624); the issue of the insurance company's liability to the insured, depending on whether the policy limits were construed as being $15,000 or $50,000 (*Pelger* v. *California Casualty Indemnity Co., supra,* 104 Cal.App.3d 861). The *Van Tassel* case, *supra,* specifically disapproves an earlier case holding not arbitrable the status of the claimant as an insured, *Farmers Ins. Exch.* v. *Ruiz* (1967) 250 Cal.App.2d 741 [59 Cal.Rptr. 13]. Issues found not arbitrable under "broad" type provisions include "disputes as to the interpre-

tation of the insurance contract" (*Campbell* v. *Farmers Ins. Exch.* (1968) 260 Cal.App.2d 105 [67 Cal.Rptr. 175]); issues surrounding waiver of the right to arbitrate, including that of the time limit for demanding arbitration (*Freeman* v. *State Farm Mut. Auto Ins. Co., supra,* 14 Cal.3d 473).[2]

Here, in light of the above precedent, we conclude the dispute is not arbitrable under the parties' agreement. The issue of whether Wallace can recover under both his and his wife's policy ("stacking") is one of construction of the policy language in light of the parties' negotiations and in our opinion is not subsumed within the concept of the amount payable to Wallace under the policy. The issue whether the policy limits are $30,000 or $100,000 depends on the question of whether Wallace waived a right to the higher coverage, and that issue is similar to the waiver issue regarding limitations held not to be arbitrable in *Freeman, supra.*

Accordingly, although the reasons given by the trial court for its decision were not correct, it properly concluded that the instant controversy is, at least in part, not subject to arbitration. Should Farmers remain desirous of seeking arbitration of arbitrable issues here, then the court will be bound to consider Wallace's claim that Farmers has waived arbitration by its lengthy resistance of his initial claim to arbitrate. (Wallace's burden, however, to show waiver of arbitration, will be a heavy one; see, e.g., *Keating* v. *Superior Court* (1982) 31 Cal.3d 584, 604 [183 Cal.Rptr. 360, 645 P.2d 1192].)

Because it is not clear whether the order denying arbitration is entirely correct (in light of the possibility Farmers may demand arbitration of arbitrable issues), we affirm the order insofar as it denies arbitration of the issues of policy stacking and amount of coverage, and remand the matter for further proceedings in the superior court in light of the views we have expressed here.

Wiener, J., and Lewis, J., concurred.

---

[2]The case of *Hartford Accident & Indemnity Co.* v. *Jackson, supra,* 150 Cal.App.3d 111, found not arbitrable the question whether a riderless horse is an uninsured motor vehicle for purposes of coverage. In that case, the insurance policy was not made part of the record on appeal, and the Court of Appeal therefore assumed only a narrow, statutory agreement to arbitrate. Accordingly, that case is not in point here.