[No. D009636. Fourth Dist., Div. One. Apr. 20, 1990.]

H. MICHAEL RUDD, Plaintiff and Appellant, v.
CALIFORNIA CASUALTY GENERAL INSURANCE COMPANY,
Defendant and Respondent.

## COUNSEL

Jennings, Engstrand & Henrikson, Gerard Smolin, Jr., and Robert B. MacDonald for Plaintiff and Appellant.

Wingert, Grebing, Anello & Brubaker, Alan K. Brubaker and Lawrence W. Shea for Defendant and Respondent.

## OPINION

FROEHLICH, J.—Uninsured motorist insurance coverage, first adopted in California in 1961,[1] was designed to provide motorists injured by an uninsured tortfeasor minimum recovery from their own insurers. Such coverage applied only to the situation in which the negligent driver who inflicted injury on the insured person was completely without insurance. Failure to compensate the injured party also resulted, however, when damage was incurred in excess of the often minimal insurance coverage purchased by the tortfeasor. To remedy this perceived defect in the insurance

---

[1] See Historical Note, 43 West's Annotated Insurance Code (1988 ed.) section 11580.2, page 306; see Chadwick & Poché, *California's Uninsured Motorist Statute: Scope and Problems* (1961) 13 Hastings L.J. 194; see discussion in *Waite v. Godfrey* (1980) 106 Cal.App.3d 760, 770-771 [163 Cal.Rptr. 881].

coverage framework, subdivision (p) was added to Insurance Code[2] section 11580.2 in 1985, providing coverage for *under*insurance.[3] The issue presented by this appeal is whether the offsets against recovery for *under*insurance parallel the offsets for *un*insurance. Specifically, we are asked to determine whether the insurer may offset its liability on an underinsurance risk by the amount of workers' compensation benefits received by the underinsured insurance policyholder.

## FACTUAL BACKGROUND

H. Michael Rudd (Insured) sustained personal injuries in an accident with a motorist whose insurance policy contained the minimum liability limits of $15,000/$30,000. The ensuing lawsuit against the motorist was settled in exchange for payment of the policy limits of $15,000. Because the accident occurred while Insured was engaged in his employment as a highway patrolman, Insured received an additional $35,000 in workers' compensation benefits. At the time of the accident Insured was the beneficiary of a policy from California Casualty General Insurance Company (Insurer) with underinsurance coverage limits of $50,000 per person and $100,000 per occurrence. In accordance with the underinsured provisions of the policy, Insured claimed total entitlement to benefits of $50,000, asserting injuries in excess of this amount. Acknowledging that the $15,000 received from the tortfeasor's insurance constituted an offset to the claim (as clearly provided by § 11580.2, subd. (p)(5)), Insured claimed the balance of $35,000.

Insurer contested Insured's claim, asserting that it could offset the $35,000 in workers' compensation benefits. Insured brought suit for declaratory relief. Upon cross-motions for summary judgment, the court ruled in favor of Insurer. This appeal followed.

## STANDARDS ON REVIEW

The trial court made its determination solely upon the basis of statutory interpretation, applied to undisputed facts. ■ It is well settled that the interpretation and application of a statutory scheme to an undisputed set of facts is a question of law (*Killian* v. *City and County of San Francisco* (1978) 77 Cal.App.3d 1, 7 [143 Cal.Rptr. 430]) which is subject to de novo review on appeal. (*Goddard* v. *South Bay Union High School Dist.* (1978) 79

---

[2] All statutory references are to the Insurance Code unless otherwise specified.

[3] 43 West's Annotated Insurance Code, *supra*, at page 309; see Schmidt, *Interpreting the Recently Enacted California Underinsurance Provisions of the Uninsured Motorist Statute* (1987) 14 Pepperdine L. Rev. 691.

Cal.App.3d 98, 105 [144 Cal.Rptr. 701].) Accordingly, we are not bound by the trial court's interpretation. (*Ibid.*)

The general principles which guide interpretation of a statutory scheme are equally settled. ■ Our function is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. (*California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698 [170 Cal.Rptr. 817, 621 P.2d 856].) To ascertain such intent, courts turn first to the words of the statute itself (*ibid.*), and seek to give the words employed by the Legislature their usual and ordinary meaning. (*Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) When interpreting statutory language, we may neither insert language which has been omitted nor ignore language which has been inserted. (Code Civ. Proc., § 1858.) The language must be construed in the context of the statutory framework as a whole, keeping in mind the policies and purposes of the statute (*West Pico Furniture Co.* v. *Pacific Finance Loans* (1970) 2 Cal.3d 594, 608 [86 Cal.Rptr. 793, 469 P.2d 665]), and where possible the language should be read so as to conform to the spirit of the enactment. (*Lungren* v. *Deukmejian, supra*, 45 Cal.3d at p. 735.)

With these general principles in mind we must evaluate whether section 11580.2 permits or precludes an insurer from setting off workers' compensation benefits against underinsured motorist coverage.[4]

### DISCUSSION: UNDERINSURED BENEFITS SETOFFS

■ The parties agree that the dispute is to be resolved by a determination of the proper interpretation of section 11580.2. The difference in their approach depends upon the relationship between section 11580.2, subd. (h), which prescribes the setoffs available against an "*un*insured motorist endorsement or coverage," and section 11580.2, subd. (p), which treats specifically losses caused by an *under*insured motorist. Subdivision (h) states that benefits under the uninsured motorist coverage are to be reduced by any amounts paid "under any workers' compensation law." Subdivision (p) does not refer to any setoff for workers' compensation, but *does* provide for a setoff for any amounts received from or on behalf of the negligently liable underinsured motorist. Insured contends that the omission of mention of workers' compensation setoffs in subdivision (p) indicates a legislative intent to exclude any such setoff in underinsured cases. Insurer, on the other hand,

---

[4]Although Insured urges that *Malone* v. *Nationwide Ins. Co.* (1989) 215 Cal.App.3d 275 [263 Cal.Rptr. 499] supports his position that workers' compensation benefits are not a proper setoff against underinsured motorist coverage, that issue was not before the *Malone* court (*Id.* at p. 277, fn. 1) and therefore the language suggesting that result is dictum. We find no case authority directly in point.

argues that subdivision (h)'s setoff provisions apply to both uninsured and underinsured motorist coverages, and that subdivision (p) merely identifies additional and cumulative setoffs (not a set of mutually exclusive setoffs) to be applied when the tortfeasor is underinsured.

We note that section 11580.2 regulates both uninsured and underinsured motorist coverages. It requires that both types of insurance be offered (subds. (a)(1) and (n)); it specifies the minimum amounts of such coverages which must be offered (*ibid.*); and it specifies the type of language which must be employed effectively to waive or reduce the amounts of such coverages (subds. (a)(2) and (a)(3)). For many purposes section 11580.2 treats uninsured and underinsured motor vehicles as synonymous. (See, e.g., subds. (a)(2), (a)(3) and (b).)

Section 11580.2, subdivision (n) specifies that underinsured motorist coverage shall be offered with at least the same limits as provided by the uninsured motorist limits, and for purposes of section 11580.2 requires both uninsured and underinsured coverages to be offered as a single coverage. Having thus amalgamated both types of coverage into a single coverage or endorsement, and having specified the substantive and procedural requirements and limitations applicable to coverages provided under the generic rubric of "uninsured motorist endorsement or coverage,"[5] section 11580.2, subdivision (h) also specifies that workers' compensation benefits are a permissible setoff against "[a]ny loss payable under the terms of *the uninsured motorist endorsement or coverage.*"[6] (Italics added.) Because the statute has embraced *both* types of coverages under the denomination "uninsured motorist coverage," we conclude the plain language of the statute specifying a workers' compensation setoff against the "uninsured motorist

---

[5] Section 11580.2, which amalgamates both types of coverages under a single coverage or endorsement (subd. (n)), also specifies certain substantive limitations on the applicability of "[t]he insurance coverage provided for in this section" (subd. (c)), and specifies the insurer paying a claim under an "uninsured motorist endorsement or coverage" is subrogated to the rights of the insured as against the legally liable parties (subd. (g)), without suggesting any differentiation between payment made on uninsured versus underinsured coverages. Section 11580.2, subdivision (f) also specifies that "[t]he policy or an endorsement" (which encompasses both coverages within the single coverage) shall provide for arbitration of disputes arising under such coverages, again without differentiation between uninsured and underinsured coverages.

[6] We note that section 11580.2, subdivision (e) provides a similar setoff for automobile medical payment insurance. Under subdivision (e) if such insurance is available to the insured, the damages which the insured is entitled to collect from "the owner or operator of an uninsured motor vehicle" (which, for purposes of § 11580.2, definitionally includes either an uninsured *or underinsured* motor vehicle, see subd. (b)) are reduced for purposes of the amounts owed under the "uninsured motorist coverage." Thus, the setoff for automobile medical payment insurance contemplates a setoff against the coverages encompassed within the single coverage denominated as "uninsured motorist coverage," even though the damages were caused by a tortfeasor who was an "underinsured" motorist.

coverage" must be construed as permitting such setoff to be applied against either type of coverage provided under the rubric of "uninsured motorist coverage."

The mere fact that subdivision (p) does not *specifically* incorporate or refer to other provisions of section 11580.2 does not mean those other provisions conflict with subdivision (p), rendering them inapplicable to underinsured cases. In *Chrisman* v. *Superior Court* (1987) 191 Cal.App.3d 1465, 1468-1469 [236 Cal.Rptr. 703], for instance, the binding arbitration provisions of subdivision (f), even though not specifically incorporated within subdivision (p)'s procedural specifications, were held applicable to disputes involving both uninsured and underinsured claims. This conclusion resulted from a finding that both coverages were encompassed within a single endorsement, and the arbitration provisions did not conflict with any express term of subdivision (p).

We therefore agree with Insurer that the specific setoff provided in subdivision (p) is cumulative to, rather than exclusive of, the other setoff provisions of section 11580.2. Nothing in subdivision (p) *expressly* describes the setoff for funds from the underinsured driver as exclusive.[7] Moreover, because subdivision (h) has already authorized workers' compensation benefits to be set off against amounts payable under the "uninsured motorist endorsement or coverage" (which, by virtue of subdivision (n), definitionally encompasses underinsurance coverages), it is unnecessary and would be redundant for subdivision (p) to restate that a setoff for workers' compensation is permissible.

This interpretation also accords with the underlying policy of section 11580.2. Numerous courts have recognized that the fundamental purpose of section 11580.2 is to provide the insured with the same insurance protections he would have enjoyed if the adverse driver had been properly insured. (See, e.g., *Farmers Ins. Exchange* v. *Hansel* (1970) 12 Cal.App.3d 570, 573 [90 Cal.Rptr. 654]; *Waite* v. *Godfrey, supra,* 106 Cal.App.3d at p. 771.) ▮ Section 11580.2 is not designed to place the insured in a *better* position than he would have occupied had the other driver carried such insurance. (See, e.g., *Interinsurance Exchange* v. *Alcivar* (1979) 95 Cal.App.3d 252, 268 [156 Cal.Rptr. 914]; *California State Auto. Assn. Inter-Ins. Bureau* v. *Carter* (1985) 164 Cal.App.3d 257, ·261-262 [210 Cal.Rptr. 140, 54 A.L.R.4th 1177].) In essence, section 11580.2 permits a responsible

---

[7]To the contrary, subdivision (p)(4) states the insurer's maximum liability is the underinsured coverage limits, reduced by the amounts "paid to the insured by or for *any* person or organization that may be held legally liable for the injury." The payments by an employer, in discharge of his legal liability to pay workers' compensation benefits for injuries incurred in the course of the employee's work (Lab. Code, § 3600, subd. (a)), would appear to qualify as a payment by "any person . . . legally liable" in reduction of the insurer's liability under underinsured coverage.

driver to protect himself against uninsured or minimally insured tortfeasors by purchasing, for his own protection, the insurance which the tortfeasor declined to purchase.

 If workers' compensation benefits could *not* be offset against underinsured motorist coverage, Insured here would be in a *better* position than he would have occupied had the tortfeasor been fully insured. If the tortfeasor had carried liability limits equal to the underinsured limits carried by Insured, Insured would by definition[8] have no claim against his underinsurance coverage. Instead, he would be limited to the amounts recoverable against the tortfeasor. In this scenario if Insured also collected workers' compensation benefits, any collections from the tortfeasor would be subjected to the employer's first priority lien for recoupment of the workers' compensation benefits it paid to Insured. (See generally, Lab. Code, §§ 3851-3856.) Thus, if the tortfeasor here had carried a $50,000 liability policy, Insured's total recovery would have been comprised of the $35,000 in workers' compensation plus $15,000 (the remainder of the insurance policy after satisfaction of the workers' compensation lien) from the tortfeasor.

Adoption of the contrary position would provide Insured with a total of more than $50,000. He would retain the $35,000 from workers' compensation, and would receive an additional $35,000 from his own carrier (i.e., his $50,000 policy limits less the tortfeasor's $15,000 policy limits). Thus, if a setoff is not allowed, Insured would be in a better position than he would have occupied had the tortfeasor carried liability limits equal to Insured's underinsured motorist limits.[9] We cannot ascribe to the Legislature an intention that victims of inadequately insured tortfeasors should receive more compensation than victims of adequately insured tortfeasors.

We therefore conclude the trial court was correct in granting summary judgment in favor of the Insurer, and in concluding the Insurer had a right to set off against amounts owed under the underinsurance policy provisions the amount of workers' compensation received by Insured.

---

[8] The underinsurance provisions and coverages only apply when the injury is caused by an "underinsured motor vehicle" (§ 11580.2, subd. (p)), defined as a vehicle which carries insurance "for an amount that is less than the uninsured motorist limits carried on the motor vehicle of the injured person." (§ 11580.2, subd. (p)(2).) Hence, where the tortfeasor carries an equal level of insurance, the underinsurance coverage has no application.

[9] Indeed, if no setoff for workers' compensation payments is allowed, an underinsured motorist policy would effectively be transformed into a policy of excess accident insurance, responsible for paying damages to the extent those damages exceed the damages which the insured recouped from workers' compensation benefits. The courts have rejected attempts to transform the insurance mandated by section 11580.2 into excess policies. (See, e.g., *Travelers Ins. Co.* v. *Bouzer* (1974) 39 Cal.App.3d 992, 995 [114 Cal.Rptr. 651]; *Interinsurance Exchange* v. *Alcivar, supra*, 95 Cal.App.3d at pp. 267-269.)

We remand for further proceedings by the trial court, however, because our record is incomplete in an area we deem important. Insured settled with the tortfeasor for $15,000. We do not know, however, what ultimate disposition was made of these proceeds. Although the settlement documents suggest the payment was made directly to Insured, there is no indication whether his employer may have asserted, or may have waived, its right to those funds. (See, e.g., *Pacific G. & E. Co.* v. *Indus. Acc. Com.* (1935) 8 Cal.App.2d 499 [47 P.2d 783].) ■ Only if the employer had relinquished its right to recoup some or all of the amounts collected from the tortfeasor (*Herr* v. *Workers' Comp. Appeals Bd.* (1979) 98 Cal.App.3d 321, 327-328 [47 P.2d 783]) would Insured have "received" a payment which Insurer would be entitled to use as an additional setoff under subdivision (p)(5).[10]

We therefore conclude Insurer may assert a subdivision (h) setoff for the amount of workers' compensation benefits paid to Insured. However, to the extent Insured did not "receive" (or retain) proceeds from the tortfeasor because of the workers' compensation carrier's lien or recoupment rights, Insurer may not additionally assert a subdivision (p) setoff against the underinsured motorist coverage. Because the record is silent on the ultimate disposition of the proceeds from the tortfeasor, this case must be remanded for further evidentiary hearings to determine whether and/or to what extent Insurer is entitled to an additional setoff for the proceeds of the tortfeasor's policy.

---

[10] Indeed, Insured urges section 11580.2 cannot be interpreted to permit a setoff for workers' compensation benefits precisely because he would be unfairly deprived of his right to receive coverage benefits of $50,000. Insured's contention is premised on the assumption that Insurer would be entitled to *duplicative setoffs*: first, for the tortfeasor's insurance proceeds (under § 11580.2, subd. (p)(5)), and thereafter for the workers' compensation benefits (under § 11580.2, subd. (h)), which would entirely exhaust the underinsured coverage limits of his policy. Insured's complaint is that he would thereafter *lose* the tortfeasor's insurance proceeds (i.e., to his employer's lien or right of recoupment), and hence would net only the $35,000 in workers' compensation benefits. We agree a net recovery of $35,000 against a policy of $50,000 would be unfair. However, we do not interpret section 11580.2 as permitting duplicative setoffs. Section 11580.2, subd. (p)(5) grants the insurer who pays an underinsured motorist claim only the right to "reimbursement or credit in *the amount received by the insured*" (italics added) from the underinsured tortfeasor. When an insured receives workers' compensation benefits for injuries caused by a third party tortfeasor, the employer is entitled to seek reimbursement from the tortfeasor for the compensation benefits paid. (Lab. Code, §§ 3852-3853, 3856.) Alternatively, the employer can offset or credit any net recovery obtained by the employee from the tortfeasor against benefits subsequently due the employee. (Lab. Code, § 3861.) To the extent the employer intervenes or files a direct suit against the tortfeasor, or liens the proceeds of any judgment or settlement from the employee's suit against the tortfeasor, the tortfeasor's insurance proceeds will be payable to the employer as recoupment of workers' compensation benefits paid, and will never be "received" or retained by the insured-employee. Where the insured-employee does not "receive" or retain such amounts from the tortfeasor, section 11580.2, subd. (p)(5)'s setoff will be inoperable.

## DISPOSITION

Affirmed in part, and remanded for further proceedings consistent with this opinion.

Benke, Acting P. J., and Nares, J., concurred.