[No. D013385. Fourth Dist., Div. One. Jan. 22, 1992.]

MANUEL FAGUNDES, Plaintiff and Appellant, v.
AMERICAN INTERNATIONAL ADJUSTMENT COMPANY et al.,
Defendants and Respondents.

1312

COUNSEL

Irwin M. Zalkin and John D. Pickett for Plaintiff and Appellant.

Zimmerman & Kahanowitch, Brian Zimmerman, Jeffrey Swartz, Robert Cohen, Douglas Lackey, Chapin, Fleming & Winet and Roger L. Popeny for Defendants and Respondents.

OPINION

NARES, J.—Manuel Fagundes (Fagundes) appeals from a grant of summary judgment against him and in favor of New Hampshire Insurance Company (New Hampshire) and American International Adjustment Company (AIAC). Fagundes argues that the insurance coverage he purchased was illusory, and triable issues of fact exist with respect to the extent of that coverage. As there was no material issue of fact, and as New Hampshire and AIAC were correctly determined to be under no legal obligation to Fagundes, we affirm.

BACKGROUND

In 1986 Fagundes applied for minimum-coverage automobile insurance under California's assigned risk plan. Fagundes sought the cheapest possible

insurance he could obtain. His application was then assigned at random to New Hampshire. New Hampshire issued Fagundes a policy including uninsured/underinsured motorist coverage of $15,000 per person as required by Vehicle Code section 16056 and Insurance Code section 11580.2, subdivision (n).[1]

The policy explained that New Hampshire would "pay damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury." An "uninsured motor vehicle" was defined as one having no insurance or having insurance with lower limits for bodily injury liability than required by California law. The policy also reflected California law by providing that any amount otherwise payable would be reduced by all sums "[p]aid because of the bodily injury by or on behalf of persons or organizations who may be legally responsible."[2]

After an accident in 1987, Fagundes learned that the other driver carried insurance with a $15,000 minimum limit, which amount Fagundes received. Fagundes also considered raising the limits of his underinsured motorist coverage, but rejected this because the increased coverage would have cost him too much. He thus decided to retain minimum coverage only, as that was all he could afford.

Counsel retained by Fagundes notified AIAC that Fagundes would be making a claim under the underinsurance provisions of the policy, notwithstanding the fact that Fagundes had received $15,000 from the other party's insurance company and had executed a release. AIAC rejected the claim

---

[1]"No policy or bond shall be effective [as proof of financial responsibility] . . . unless the policy or bond is subject . . . to a limit . . . of not less than fifteen thousand dollars ($15,000) because of bodily injury to or death of one person in any one accident." (Veh. Code, § 16056, subd. (a).)

"Underinsured motorist coverage shall be offered with limits equal to the limits of liability for the insured's uninsured motorist limits in the underlying policy, and may be offered with limits in excess of such uninsured motorist coverage. For the purposes of this section, uninsured and underinsured motorist coverage shall be offered as a single coverage." (Ins. Code, § 11580.2, subd. (n).)

All further statutory references are to the Insurance Code unless otherwise specified.

[2]"When bodily injury is caused by one or more motor vehicles, whether insured, underinsured, or uninsured, the maximum liability of the insurer providing the underinsured motorist coverage shall not exceed the insured's underinsured motorist coverage limits, less the amount paid to the insured by or for any person or organization that may be held legally liable for the injury." (§ 11580.2, subd. (p)(4).)

"The insurer paying a claim under this subdivision shall, to the extent of the payment, be entitled to reimbursement or credit in the amount received by the insured from the owner or operator of the underinsured motor vehicle or the insurer of the owner or operator." (§ 11580.2, subd. (p)(5).)

because the other party's policy limits were equal to those of Fagundes, and thus "the underinsured motorist coverage would not apply" and Fagundes's receipt of $15,000 from the other party meant that in any event no sums whatsoever were owed to Fagundes by New Hampshire pursuant to section 11580.2, subdivision (p)(4).[3]

Fagundes eventually filed suit against New Hampshire and AIAC, asserting (among many other matters) that policy representations made as to the effect of underinsured motorist coverage are ambiguous, and also that the minimum-limits coverage is illusory so far as the concept of "underinsurance" applies. On motion by AIAC and New Hampshire, summary judgment (which was also urged on a wide variety of issues not necessary to review) was granted on the bases that no triable issue of fact existed, and as a matter of law the uninsured/underinsured motorist coverage issued by New Hampshire was not illusory. Timely notice of appeal was filed.[4]

### STANDARD OF REVIEW

■ "A summary judgment may be granted only if no material triable issue of fact exists. The moving parties' affidavits must set forth facts entitling them to a judgment as a matter of law." (*Lopez* v. *McDonald's Corp.* (1987) 193 Cal.App.3d 495, 503 [238 Cal.Rptr. 436]; *Lipson* v. *Superior Court* (1982) 31 Cal.3d 362, 374 [182 Cal.Rptr. 629, 644 P.2d 822].) "Designed to resolve litigation by avoiding needless trials [citation], the purpose for summary judgment 'is to penetrate evasive language and adept pleading and to ascertain, by means of affidavits, the presence or absence of triable issues of fact' [citation]." (*Tollefson* v. *Roman Catholic Bishop* (1990) 219 Cal.App.3d 843, 852 [268 Cal.Rptr. 550], quoting *Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].) Where there are no triable fact issues and the parties' contentions involve questions of law alone, summary judgment is proper. (*Lopez* v. *McDonald's Corp.*, *supra*, 193 Cal.App.3d at p. 503; *Ferrell* v. *Southern Nevada Off-Road Enthusiasts, Ltd.* (1983) 147 Cal.App.3d 309, 313 [195 Cal.Rptr. 90].)

Consequently, the trial court's role in ruling on a motion for summary judgment is strictly confined to determining whether material triable issues of fact exist, and not to deciding the merits of any of those issues. (*Molko* v. *Holy Spirit Assn.*, *supra*, 46 Cal.3d at p. 1107.) ■ Finally, " '[i]n examining the sufficiency of affidavits filed in connection with the motion, the

---

[3]See footnote 2, *ante.*

[4]Although the parties have not included a copy of the entered judgment in the record, we assume (as both parties assert) the summary judgment order filed on August 14, 1990, was thereafter entered as a judgment.

affidavits of the moving party are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion.' " (*Corwin* v. *Los Angeles Newspaper Service Bureau, Inc.* (1971) 4 Cal.3d 842, 851-852 [94 Cal.Rptr. 785, 484 P.2d 953], quoting *Stationers Corps.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785].)

## DISCUSSION

California statutes require uninsured/underinsured coverage be offered in automobile liability insurance policies. The policy in this case contained the required coverage, which was described in language clearly expressing the conditions as to which that coverage would be applicable. Appellant thus had a heavy burden to demonstrate ambiguity or illegality which would at least create a triable issue of fact, so as to defeat a motion for summary judgment. We hold that burden was not met.

■ The California uninsured/underinsured statutes are the "offset" variety, in which the limit payable is *reduced* by all the amounts received from other sources. Other states have statutes of the "make whole" variety, in which payment of the policy limits in *addition* to all funds received from any third parties may be necessitated if the insured's damages equal or exceed such amounts. "The California underinsurance scheme focuses on the amount of the tortfeasor's automobile liability policy. Conversely, [other states'] statutes concentrate on the amount of the injured driver's damages. This focus on the tortfeasor's liability restricts the availability of underinsurance coverage even where the injured driver suffers uncompensated damages. Unless the tortfeasor's liability policy is in an amount less than the uninsured motorist policy of the injured driver, underinsurance is not available." (Schmidt, *Interpreting the Recently Enacted California Underinsurance Provisions of the Uninsured Motorist Statute* (1987) 14 Pepperdine L.Rev. 691, 694-695, fns. omitted.)

A simple observation here is that our Legislature has spoken. If a different statutory scheme is indeed to be preferred, it seems clear that this is a matter for the Legislature alone to accomplish.

As noted above, Fagundes contends that either (1) the underinsured motorist benefits should be interpreted to provide for full excess coverage, or in the alternative (2) the underinsurance coverage offered at the minimum level is illusory. Neither point has merit under existing law.

## I. COVERAGE

As another division of this court has held, "underinsured motorist coverage is not the equivalent of full excess coverage. As the statutory scheme is

designed, the underinsured motorist carrier gets a dollar-for-dollar credit for all payments by third party tortfeasors to the insureds, whether the insureds are made whole or not. In other words, a carrier providing underinsured motorist benefits *never* pays the full amount, only the difference between the policy limits and all contributions by all tortfeasors to all insureds." (*Malone* v. *Nationwide Mutual Ins. Co.* (1989) 215 Cal.App.3d 275, 277 [263 Cal.Rptr. 499], italics in original.) "We may not rewrite the statute to bring about a contrary result even if that result could be argued to be socially desirable. That is for the Legislature." (*Interinsurance Exchange* v. *Velji* (1975) 44 Cal.App.3d 310, 315-316 [118 Cal.Rptr. 596].) Fagundes's argument ignores these principles.

Nor may Fagundes escape application of these settled principles to his case by claiming that the policy language employed by New Hampshire is ambiguous. As our Supreme Court held in a case involving these statutes, "the policy condition is as clear as [the statute] allows," and policy conditions clearly expressing statutory formulas are not ambiguous. (*Wagner* v. *State Farm Mutual Auto. Ins. Co.* (1985) 40 Cal.3d 460, 465 [220 Cal.Rptr. 659, 709 P.2d 462].) Any complexity in New Hampshire's policy language only reflects the complexity of the statutes specifying what the coverage must contain and how it is to be applied.

"In the absence of ambiguities, the rights of the parties rest on the insurance contract as written." (*Barrett* v. *Farmers Ins. Group* (1985) 174 Cal.App.3d 747, 752 [220 Cal.Rptr. 135].) Once the question of purported ambiguity is put aside, it is clear that as a matter of law Fagundes has no valid claim for payments under the underinsured motorist coverage he purchased. That coverage would only be triggered by an accident involving a vehicle with liability coverage less than that of Fagundes's policy. Here, however, the accident involved a vehicle with equal, rather than lesser, coverage, and thus the underinsured motorist coverage does not come into effect. Finally, even if by some means the coverage was operative, as Fagundes had received the full policy limits from the tortfeasor, the "offset" provisions of our statutes would reduce New Hampshire's liability even where the coverage was effective to the amount of zero. Under any view Fagundes has no claim against New Hampshire and AIAC.

## II. ILLUSORY CONTRACT

Fagundes argues that, notwithstanding the question of ambiguity, the minimum-limits uninsured/underinsured policy coverage is illusory. The argument is that an accident with a person without coverage will be covered by the "uninsured motorist" coverage, and that accidents with insured motorists can never be covered, as all such motorists must have policy limits

equal to or exceeding the minimum requirements. Thus, Fagundes argues, he paid for "underinsured motorist" coverage separately from his payment for "uninsured motorist" coverage, and the "underinsured motorist" coverage is in fact illusory.

"With all respect, that argument permits the solution to wag the problem." (*Wagner* v. *State Farm Mutual Auto. Ins. Co.*, *supra*, 40 Cal.3d at p. 468.) Although underinsured motorist coverage *may* be offered with higher limits than coverage for uninsured motorists, it *must* be at least equal thereto, and in any event "uninsured and underinsured motorist coverage shall be offered as a single coverage." (§ 11580.2, subd. (n).) The logical consequence of purchase of minimum-limits insurance is that other drivers will either be uninsured, or will have at least as much coverage as the minimum-limits purchaser. The point of underinsurance coverage is that an insured may elect to pay more money in order to purchase coverage with higher than minimum limits, an option which (albeit after the accident in question herein) was considered and rejected by Fagundes.

The fact that at the minimum level underinsurance coverage will generally not come into play is irrelevant, in light of the statutory direction that uninsured motorist and underinsured motorist coverage "shall be offered as a single coverage." The New Hampshire policy does neither more nor less than required by statute. The words employed in the policy are as clear and direct as the complex subject matter admits. The fact that in many cases purchase of minimum coverage will not provide reason to invoke underinsured coverage, as distinct from uninsured coverage, is an arithmetical consequence of no weight or significance to purchasers of insurance. When an insurance company offers coverage mandated by law, in words which parallel the language of the statute, it is logically impossible to charge the insurance company with offering an illusory contract, when the contract offered is mandated.[5]

As this court has noted, "[f]or many purposes section 11580.2 treats uninsured and underinsured motor vehicles as synonymous." (*Rudd* v. *California Casualty Gen. Ins. Co.* (1990) 219 Cal.App.3d 948, 953 [268 Cal.Rptr.

---

[5]Fagundes relies upon the decision of the Supreme Court of Illinois in *Galzewski* v. *Coronet Ins. Co.* (1985) 108 Ill.2d 243 [483 N.E.2d 1263]. That case permitted an action for fraud on the basis that assuming underinsurance coverage had no value, insurance companies "made a false representation as to the value of the coverage by issuing it without disclosing that it had no value." (*Id.*, 483 N.E.2d at p. 1266.) In *Wagner* v. *State Farm Mutual Auto. Ins. Co.*, *supra*, 40 Cal.3d at pages 468-469, footnote 11, our Supreme Court rejected the reasoning of the Illinois court in another matter as having fallen victim to confusion between the purpose and the effect of uninsured motorist statutes. We observe only that we decline to follow the Illinois court in this matter.

Fagundes also refers us to the dissent in *Schwieterman* v. *Mercury Casualty Co.* (1991) 229 Cal.App.3d 1044, 1048-1049 [280 Cal.Rptr. 804], which dissent found minimum-limits underinsured coverage illusory. That case involved interpretation of statutes, not insurance

624].) In that case we were urged to hold that uninsured and underinsured coverages were distinct in that a permissible setoff for uninsured coverage need not apply to underinsured coverage. (*Id.* at p. 951.) We rejected that argument, holding instead that the statute "must be construed as permitting such setoff to be applied against either type of coverage [uninsured or underinsured] provided under the rubric of 'uninsured motorist coverage.' " (*Id.* at p. 954.)

In like manner, the fact that at minimum levels the underinsured portion rather than the uninsured portion of this single coverage will rarely be used does nothing to render the coverage illusory, particularly where, as noted, the offered coverage is precisely that mandated by statute. As we noted in another case where we rejected a spurious distinction between uninsured and underinsured coverage, "any other result [would] be absurd and result in a strained reading of the policy." (*Wallace* v. *Farmers Ins. Group* (1986) 177 Cal.App.3d 735, 738 [223 Cal.Rptr. 171].) We so hold here.

### SUMMARY

In this case, "plaintiff['s] complaint is couched in several causes of action. . . . Inspection of the complaint, however, reveals that plaintiff['s] theories are based on the assumption that [he is] not subject to [Insurance Code section 11580.2,] subdivision [p], or that [New Hampshire], at least, owed [him] a duty to inform [him] expressly that it was not furnishing coverage which [he] thought [he was] getting. Since [New Hampshire] furnished precisely such protection as was demanded by statute and clearly delineated in its policies, these causes of action are built on quicksand." (*Wagner* v. *State Farm Mutual Auto. Ins. Co.*, *supra*, 40 Cal.3d at p. 469.) In view of our resolution of the issues of coverage and illusory contract, we need not address other contentions of the parties.

### DISPOSITION

Judgment affirmed. Respondents to recover costs on appeal.

Kremer, P. J., and Huffman, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 15, 1992.

---

policies, and in a different factual context. In any event, nothing in the dissenting opinion in *Schwieterman* persuades us to find error in the matter before us.