[No. D019836. Fourth Dist., Div. One. Jan. 10, 1996.]

MERCURY INSURANCE COMPANY, Plaintiff and Respondent, v. DEBORAH A. VANWANSEELE-WALKER et al., Defendants and Appellants.

## COUNSEL

Casey, Gerry, Casey, Westbrook, Reed & Schenk, Robert J. Francavilla and Bonnie E. Kane for Defendants and Appellants.

Kinkle, Rodiger & Spriggs and Guillermo W. Schnaider for Plaintiff and Respondent.

## OPINION

**HALLER, J.—** ■ A passenger is fatally injured in a single-vehicle accident. The passenger's heirs recover money from the negligent driver's insurer *and* from the car manufacturer. The negligent driver's insurance policy limits are less than the passenger's underinsurance motorist policy limits. Must the heirs' recovery under the passenger's underinsurance policy be offset by the amount received from the car manufacturer? As we shall explain, the answer clearly mandated by Insurance Code section 11580.2, subdivision (p)(4)[1] is that the insurance benefits are reduced by the amount received from the car manufacturer.

### FACTS

The facts are undisputed. Michael Walker was a passenger in a Toyota owned and driven by Kevin Rausis. Walker and two other passengers were killed when the Toyota was involved in a single-vehicle accident.

When the accident occurred, Walker had an automobile insurance policy with Mercury Insurance Company (Mercury), providing him with underinsured bodily injury coverage of $100,000 per person and $300,000 per accident. Rausis had an automobile insurance policy with California Casualty with bodily injury limits of $30,000 per person and $60,000 per accident.

---

[1] Insurance Code section 11580.2, subdivision (p)(4) provides: "When bodily injury is caused by one or more motor vehicles, whether insured, underinsured, or uninsured, the maximum liability of the insurer providing the underinsured motorist coverage shall *not* exceed the insured's underinsured motorist coverage limits, *less the amount paid to the insured by or for any person or organization that may be held legally liable for the injury.*" (Italics added.)

All statutory references are to Insurance Code section 11580.2. For convenience, we shall refer to section 11580.2, subdivision (p) as section 11580.2(p).

Walker's wife and two children[2] (appellants) suffered wrongful death damages in excess of $1 million. Appellants brought a wrongful death action against Rausis and Toyota. Appellants settled the lawsuit against both parties. Toyota paid appellants $466,666.67 in settlement of appellants' products liability claims. California Casualty, on behalf of Rausis, settled with appellants for $25,000. The balance of California Casualty's policy limits was paid to the heirs of the other passengers who died in the accident.

Mercury brought an action against appellants, seeking a declaration it did not owe any underinsured motorist benefits under Walker's policy because appellants had already received more than the underinsured policy limits ($100,000) from responsible parties. The trial court agreed and ruled that Mercury was not obligated to pay any underinsured motorist benefits to appellants.

Appellants contend the court erred in determining the benefits to which they were entitled under Walker's underinsurance policy must be offset by the amount they received from Toyota. For the reasons explained below, we reject appellants' contention and affirm the judgment.

## DISCUSSION

### *Scope of Review*

■ Generally, the rights of the parties to an insurance dispute are determined by reference to the terms of the insurance policy. Here, the relevant insurance policy provisions are essentially identical to the provisions of section 11580.2(p),[3] which set forth rules and procedures governing underinsurance motor vehicle coverage. Thus, both parties agree their dispute should be resolved by reference to the statutory provisions. (See *Hartford Fire Ins. Co.* v. *Macri* (1992) 4 Cal.4th 318, 324 [14 Cal.Rptr.2d 813, 842 P.2d 112] (*Macri*).)

■ Moreover, because the trial court made its determination by applying undisputed facts to the applicable law, the issue is subject to a de novo appellate review. (*Rudd* v. *California Casualty Gen. Ins. Co.* (1990) 219 Cal.App.3d 948, 951-952 [268 Cal.Rptr. 624].)

---

[2]Deborah A. Vanwanseele-Walker is Walker's widow. Dayna and Nicholas Walker are Walker's children.

[3]Section 11580.2, subdivisions (a) through (o) also pertain to underinsurance coverage, except to the extent such provisions conflict with subdivision (p). (See § 11580.2(p); *Quintano* v. *Mercury Casualty Co.* (1995) 11 Cal.4th 1049, 1053 [48 Cal.Rptr.2d 1, 907 P.2d 1057].)

## How Underinsurance Coverage Works

Section 11580.2(p) contains seven separate subsections governing underinsured motorist coverage. Under the statutory scheme, whether underinsurance coverage is triggered depends on the relationship between the tortfeasor's insurance limits and the victim's underinsurance coverage limits. (§ 11580.2(p); *Macri, supra,* 4 Cal.4th at p. 328; *Fagundes* v. *American Internat. Adjustment Co.* (1992) 2 Cal.App.4th 1310, 1315 [3 Cal.Rptr.2d 763].) ■ Underinsurance policy benefits are potentially available only when " 'the tortfeasor's liability policy is in an amount less than the underinsured motorist policy of the injured driver . . . .' " (*Macri, supra,* 4 Cal.4th at p. 328, quoting Schmidt, *Interpreting the Recently Enacted California Underinsurance Provisions of the Uninsured Motorist Statute* (1987) 14 Pepperdine L.Rev. 691, 694-695.) If the tortfeasor's coverage limits are lower than the victim's underinsurance policy limits, the insured is entitled, at most, to recover the difference between the two. (*Ibid.*; see *Quintano* v. *Mercury Casualty Co., supra,* 11 Cal.4th 1049, 1056.)

Appellants concede the insurance benefits to which they are entitled from Mercury ($100,000) must be offset by the amount they received from Rausis ($25,000). Appellants do not agree, however, that the amount they received from Toyota should offset their insurance recovery. In addressing this assertion, we turn first to the relevant subdivision of section 11580.2: subdivision (p)(4).

## Section 11580.2(p)(4)

Section 11580.2(p)(4) establishes the maximum amount for which an insurer must pay under an underinsured motorist policy. That code section states in relevant part: "[T]he maximum liability of the insurer providing the underinsured motorist coverage shall not exceed the insured's underinsured motorist coverage limits, *less* the amount paid to the insured by or for any person or organization that may be held legally liable for the injury." (Italics added.) Appellants concede Toyota is an "organization that may be held legally liable for the injury." Thus, under the plain words of the statute, Mercury's maximum liability "shall not exceed" Walker's underinsurance coverage limits ($100,000) *less* amounts paid by Toyota ($466,666.67). Since $466,666.67 is more than $100,000, appellants are not entitled to any payment from Mercury.

■ Appellants nonetheless maintain amounts received from Toyota should not be used as an offset because the result is contrary to the "fundamental" purpose of the underinsurance scheme, which is "to provide

the insured with the same insurance protections he would have enjoyed if the adverse driver had been properly insured." (*Rudd* v. *California Casualty Gen. Ins. Co.*, *supra*, 219 Cal.App.3d at p. 954; see also *State Farm Mut. Auto. Ins. Co.* v. *Messinger* (1991) 232 Cal.App.3d 508, 521 [283 Cal.Rptr. 493] [California's underinsurance coverage rules "focu[s] on placing the insured in the position he or she would have been in if the underinsured motorist had had liability coverage equal to the insured's underinsured motorist limits"].) As appellants point out, if Rausis had liability coverage equal to appellants' underinsured coverage, appellants would have been entitled to receive their share of the policy limits of that insurance *plus* recover additional damages from Toyota under a products liability theory.

■ While we agree section 11580.2(p)(4) does not place appellants in the same position in which they would have been had Rausis purchased coverage equal to their own, the result here is consistent with another fundamental principle underlying the underinsurance statute, which is to focus on the amount of the *tortfeasor*'s policy limits rather than on the damages suffered by the injured party. (*Macri*, *supra*, 4 Cal.4th at p. 328; *Fagundes* v. *American Internat. Adjustment Co.*, *supra*, 2 Cal.App.4th at p. 1315.) Although other jurisdictions have adopted rules ensuring that those who purchase underinsurance coverage will be fully compensated, California's underinsured coverage " 'is not the equivalent of full excess coverage.' " (*Macri*, *supra*, 4 Cal.4th at p. 328.) " 'As the statutory scheme is designed, the underinsured motorist carrier gets a dollar-for-dollar credit for all payments by third party tortfeasors to the insureds, whether the insureds are made whole or not. In other words, a carrier providing underinsured motorist benefits *never* pays the full amount, *only the difference between the policy limits and all contributions by all tortfeasors to all insureds.*' " (*Ibid.*, second italics added, quoting *Malone* v. *Nationwide Mutual Ins. Co.* (1989) 215 Cal.App.3d 275, 277 [263 Cal.Rptr. 499]; accord, *Fagundes* v. *American Internat. Adjustment Co.*, *supra*, 2 Cal.App.4th at p. 1315; see also *Quintano* v. *Mercury Casualty Co.*, *supra*, 11 Cal.4th at p. 1056.)

■ Moreover, the fact the Legislature intended to place an automobile accident victim who purchased underinsurance coverage in the same position as if the tortfeasor had purchased equivalent policy limits, does not necessarily mean the Legislature sought to achieve the same level of equality where the injured party receives additional payments from third parties. As Mercury asserts, there is nothing inconsistent in seeking to address a coverage gap and simultaneously specifying that third party payments are to be considered in determining whether a gap exists and the size of the gap. The Legislature could have legitimately decided that to the extent of payments from third party tortfeasors, underinsurance protection is not needed.

■ Further, appellants' legislative policy argument does not permit us to ignore the plain language of the statute. In interpreting the detailed provisions of section 11580.2, the courts have strictly adhered to the rule that where a statute is clear, it is improper to " 'interpret away clear language in favor of an ambiguity that does not exist.' [Citation]." (*Macri, supra,* 4 Cal.4th at p. 326.) Although recognizing the underinsurance statutory provisions are "not a model of clarity" (*ibid.*), our courts have uniformly resisted requests that they rewrite the statutory language to achieve a perceived legislative or public policy goal. (See, e.g., *Fagundes* v. *American Internat. Adjustment Co., supra,* 2 Cal.App.4th at p. 1316 [" 'We may not rewrite the statute to bring about a contrary result even if that result could be argued to be socially desirable. That is for the Legislature.' "]; *Holcomb* v. *Hartford Casualty Ins. Co.* (1991) 230 Cal.App.3d 1000, 1006 [281 Cal.Rptr. 651], [although recognizing its strict construction of the statutory language "result[ed] in an anomaly," the court adhered to the construction, explaining "[t]his anomaly is one created by the Legislature . . . ."]; see also *Macri, supra,* 4 Cal.4th at p. 333 (conc. opn. of Panelli, J.) [although interpreting section 11580.2 to mean that an insurer has no subrogation right in the underinsurance context results in an "inequity" which "makes little sense," such interpretation is compelled by the statutory language].)

■ The statutory language is clear: an insured's recovery under an underinsurance policy must be offset by amounts received from other "person[s] or organization[s] legally liable for the injury." (§ 11580.2(p)(4); see *Macri, supra,* 4 Cal.4th at p. 328; *Fagundes* v. *American Internat. Adjustment Co., supra,* 2 Cal.App.4th at p. 1315; *Malone* v. *Nationwide Mutual Ins. Co., supra,* 215 Cal.App.3d at p. 277; *Rudd* v. *California Casualty Gen. Ins. Co., supra,* 219 Cal.App.3d at p. 954, fn. 7.)[4] Toyota, which settled claims asserting that it was liable on the basis of products liability, is an "organization legally liable for the injury." Thus, appellants' recovery under Walker's insurance policy must be offset by the Toyota settlement amount. There is no room for a different construction where there is no ambiguity.

*Section 11580.2(p)(5)*

■ Appellants argue that section 11580.2(p)(5), rather than section 11580.2(p)(4), controls here, and that under section 11580.2(p)(5), Mercury

---

[4]In *Rudd,* this court held an insurer is entitled to reduce the amount it owes under an underinsurance policy by the amount of workers' compensation benefits received by the policyholder. While we reached our determination based primarily on our conclusion that section 11580.2, subdivision (h)(1)'s workers' compensation setoff provision applied to underinsurance coverage, we observed that our determination was also supported by subdivision (p)(4) since "payments by an employer . . . [of] workers' compensation benefits . . . would appear to qualify as a payment by 'any person . . . legally liable' " within the meaning of subdivision (p)(4). (*Rudd* v. *California Casualty Gen. Ins. Co., supra,* 219 Cal.App.3d at p. 954, fn. 7.)

is not entitled to reimbursement for amounts received from Toyota because subdivision (p)(5) directs a setoff only in the amount received from the underinsured motorist (Rausis).

To properly examine appellants' argument, it is helpful to set forth together section 11580.2(p)(3), (p)(4), and (p)(5):

"(p)(3) [Underinsurance] coverage does not apply to any bodily injury until the limits of bodily injury liability policies applicable to all insured motor vehicles causing the injury have been exhausted by payment of judgments or settlements, and proof of the payment is submitted to the insurer providing the underinsured motorist coverage.

"(p)(4) When bodily injury is caused by one or more motor vehicles, whether insured, underinsured, or uninsured, the maximum liability of the insurer providing the underinsured motorist coverage shall not exceed the insured's underinsured motorist coverage limits, less the amount paid to the insured by or for any person or organization that may be held legally liable for the injury.

"(p)(5) The insurer paying a claim under this subdivision shall, to the extent of the payment, be entitled to reimbursement or credit in the amount received by the insured from the owner or operator of the underinsured motor vehicle or the insurer of the owner or operator."

Appellants initially maintain that section 11580.2(p)(4) and (p)(5) are alternative setoff provisions that apply in different circumstances. According to appellants, subdivision (p)(4) applies to multivehicle accidents and subdivision (p)(5) applies to single vehicle accidents.

The argument is unsupported by the statutory language. Section 11580.2(p)(4) states that it applies "[w]hen bodily injury is caused by *one or more* motor vehicles, whether insured, underinsured, or uninsured . . . ." (Italics added.) Subdivision (p)(5) does not contain any language suggesting the code section applies exclusively to single vehicle accidents.

 Our review of section 11580.2(p)'s legislative history confirms that the Legislature intended subdivision (p)(4) to apply in a single-vehicle accident. As a proposed amendment, the language of subdivision (p)(4) was similar to the present version, except that it began "[w]hen bodily injury is caused by *two or more* motor vehicles." ([Proposed] Amends. to Assem. Bill No. 3984 (1983-1984 Reg. Sess.) as amended May 16, 1984, p. 1 [available at Cal. State Archives], italics added.) In apparent response to insurance

industry demands, the proposed amendment was thereafter modified to delete the phrase "*two or more* motor vehicles" and to replace it with "*one or more* motor vehicles." (Sen. Amend. to Assem. Bill No. 3984 (1983-1984 Reg. Sess.) Aug. 28, 1984; see Letter from James E. Prosser, OMI Government Relations to Assemblyman Connelly (Aug. 27, 1984) regarding Assem. Bill No. 3984 (1983-1984 Reg. Sess.) [available at Cal. State Archives].) Thus, although subdivision (p)(4)'s broad offset provision may have been originally drafted to apply only to multivehicle accidents, the Legislature expressly extended the subdivision's application to include single-vehicle accidents.[5]

Appellants alternatively urge us to refuse to apply section 11580.2(p)(4)'s offset provisions to this case because subdivision (p)(4) and subdivision (p)(5) conflict. Appellants point out that subdivision (p)(4) permits offsets for amounts paid by any "legally liable" party whereas subdivision (p)(5) permits a "reimbursement or credit" for "the amount received . . . from the owner or operator of the insured motor vehicle or the insurer of the owner or operator." As in this case, the amount of offset under subdivision (p)(4) ($466,666.67) could be different from the amount of reimbursement/credit under subdivision (p)(5) ($25,000). Appellants maintain the only way to harmonize subdivisions (p)(4) and (p)(5) is to hold that (p)(4) applies only to multiple vehicle accident cases *or* to hold that (p)(4) does not permit an insurer to obtain an offset for payments received by the insured from a third (nonmotor vehicle driver) party such as Toyota.

We disagree that the only way to harmonize section 11580.2(p)(4) and (p)(5) is to ignore the plain language of subdivision (p)(4) and distort the meaning of the subdivision. (See *Michaelis* v. *Schori* (1993) 20 Cal.App.4th 133, 136 [24 Cal.Rptr.2d 380] [" '[T]wo potentially conflicting statutes must be construed . . . in such a manner that harmonizes and *gives effect to both.* . . .' " Italics added.].) Most significantly, there is nothing in subdivision (p)(5)'s statutory language providing that its setoff provision is exclusive or that subdivision (p)(5) is not subject to the maximum liability rules set forth in subdivision (p)(4). (See *Rudd* v. *California Casualty Gen.*

---

[5]Appellants rely on a portion of *Macri* in which the court refers to section 11580.2(p)(4) as the subdivision dealing with "procedures to be followed in multi-vehicle accidents." (*Macri, supra,* 4 Cal.4th at p. 327.) Viewing *Macri's* language in context, the court was not intending to comprehensively define the meaning of the subdivision. Rather, the court identified a purpose of subdivision (p)(4), which is to clarify the underinsurance rules applicable when more than one driver is the legal cause of an insured's injuries. (See *Holcomb* v. *Hartford Casualty Ins. Co., supra,* 230 Cal.App.3d at p. 1006.) Moreover, to the extent the legislative materials characterized subdivision (p)(4) as setting forth multivehicle accident claims procedures, such characterization apparently occurred *before* the bill had been written to apply when the accident involves "one or more motor vehicles."

*Ins. Co., supra*, 219 Cal.App.3d at p. 954.) The fact that subdivision (p)(5) permits a reimbursement/credit for certain amounts does not mean that an insurer is not also entitled to an offset for amounts expressly permitted under subdivision (p)(4).

The two subdivisions pertain to different aspects of the underinsurance claims process. Section 11580.2(p)(4) sets forth the maximum amount of coverage for which an underinsured carrier will be liable. Subdivision (p)(5), on the other hand, establishes an alternative to providing an underinsurance carrier with subrogation rights. (*Macri, supra*, 4 Cal.4th at p. 328; see also *Quintano* v. *Mercury Casualty Co., supra*, 11 Cal.4th at p. 1056.) Our Supreme Court recently explained that the Legislature intended subdivision (p)(5) to provide an underinsured motorist carrier a right to recover amounts paid by a tortfeasor *from* its insured, rather than a subrogation right against the underinsured driver. (*Macri, supra*, 4 Cal.4th at p. 328.) Thus, while subdivision (p)(5) refers to an "amount" of reimbursement/credit, this subdivision was not intended to speak to the issue before us—the maximum amount of coverage for which an underinsured carrier is responsible. Instead, the maximum coverage question is specifically controlled by subdivision (p)(4).

Accordingly, because section 11580.2(p)(4) and (p)(5) can be reconciled, we reject appellants' argument that we should ignore the words of subdivision (p)(4) and instead apply subdivision (p)(5).[6]

We also reject appellants' further contention the collateral source rule precludes an offset for the amount paid by Toyota. To the extent the doctrine would generally apply here, the Legislature has specifically stated that amounts received from other tortfeasors *are* deducted from the amount an insured recovers under an underinsured policy. Because the Legislature has specifically addressed the issue, we are bound to follow the statutory mandate, rather than the judicially created collateral source doctrine.

### Policy Considerations

Finally, appellants urge us to adopt a rule entitling them to retain their Toyota settlement proceeds and to retain their underinsurance policy benefits, explaining that, as the wife and two young children of the victim,

---

[6]At oral argument, Mercury's counsel acknowledged that section 11580.2(p)(4) and (5) could potentially establish different offset *amounts* and maintained that such difference is a function of the time at which the insurance company must pay an insured's claim. Appellants counter that such distinction makes no sense and is contrary to public policy. Because we are able to harmonize the subdivisions on another ground, we need not address this issue in this case.

they have not been fully compensated for their loss. While we sympathize with appellants and understand their argument that they have not been made whole, the Legislature has made a clear determination that the goal of our state's underinsurance system is not to make a victim "whole," but instead to ensure that underinsurance benefits are available when an insured has not recovered equivalent amounts from all tortfeasors liable for the injury. Appellants' insurance policy at issue contains the same plain language, providing that Mercury's "maximum liability . . . company shall not exceed the insured's underinsured motorist coverage limits, less the amount paid to the insured by or for any person or organization that may be held legally liable for the injury." Appellants are bound by the statutes and the language of their insurance policy.

DISPOSITION

Judgment affirmed.

Work, Acting P. J., and Nares, J., concurred.

Appellants' petition for review by the Supreme Court was denied May 1, 1996.