Filed 11/16/16 (unmodified opn. attached)
<u>CERTIFIED</u> <u>FOR</u> <u>PARTIAL</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| ANDERSON UNION HIGH SCHOOL DISTRICT, | C078491 |
| Plaintiff and Appellant, | (Super. Ct. No. 177944) |
| v. | MODIFICATION OF OPINION UPON DENIAL OF PETITION FOR REHEARING |
| SHASTA SECONDARY HOME SCHOOL, | |
| Defendant and Respondent. | [NO CHANGE IN JUDGMENT] |

THE COURT:

Shasta Secondary Home School has submitted a petition for rehearing that is 77 pages in length and makes a number of completely new arguments, contrary to the rules of appellate practice. (See, e.g., *Reynolds v. Bement* (2005) 36 Cal.4th 1075, 1092 [" 'It is well settled that arguments . . . cannot be presented for the first time in a petition for rehearing' "].) We decline to consider those arguments raised for the first time. After considering those arguments appropriate to the petition, we deny the petition with the slight modification described below. We grant the "Requested Non-substantive

1

Corrections to Opinion" filed by Anderson Union High School District on October 27, 2016, and set forth those two corrections below.

It is ordered that the opinion filed herein on October 17, 2016, be modified as follows:

1. At the end of the last paragraph on page 18 (continuing on to page 19), the two sentences following the sentence "We find this argument unconvincing," and beginning with "The broader 'notwithstanding' preamble . . . " are to be deleted and replaced with the following:

The broader "notwithstanding" preamble of section 47605.1, subdivision (c) follows the pattern of most of section 47605.1 (see subdivisions (a)(1), (a)(2), and (g)),and necessarily includes both subdivision (a) of section 47605 and subdivision (a) of section 47605.1. It is the narrow "notwithstanding" preamble of subdivision (d) that has limited application.

2. On page 1, "Meagan" is to be deleted and replaced with "Megan."

3. On page 11 in the first paragraph (which is continued from the prior page), the word "need" is to be deleted and replaced with "needed."

As modified, the petition for rehearing is denied. This modification does not change the judgment.

FOR THE COURT:


_____/s/_____
Raye, P. J.


_____/s/_____
Duarte, J.


_____/s/_____
Renner, J.

2

Filed 10/17/16 (unmodified version)
CERTIFIED FOR PARTIAL PUBLICATION*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| ANDERSON UNION HIGH SCHOOL DISTRICT, | C078491 |
| Plaintiff and Appellant, | (Super. Ct. No. 177944) |
| v. | |
| SHASTA SECONDARY HOME SCHOOL, | |
| Defendant and Respondent. | |

        APPEAL from a judgment of the Superior Court of Shasta County, Monica Marlow, Judge.  Reversed.

        Lozano Smith, Sloan R. Simmons, Meagan E. Macy and Anne L. Collins for Plaintiff and Appellant.

---

* Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of Part IV.

1

Dannis Woliver Kelley, Sue Ann Salmon Evans, Karl H. Widell; California School Boards Association, Keith J. Bray and Joshua R. Daniels for California School Boards Association Education Legal Alliance as Amicus Curiae on behalf of Plaintiff and Appellant.

Young, Minney & Corr, Paul C. Minney, Lisa A. Corr, William J. Trinkle and Kathleen M. Ebert for Defendant and Respondent.

Girard & Edwards, Michael Tucker and Eric E. Stevens for Dehesa School District, Julian Union School District, and Mountain Empire Unified School District as Amici Curiae on behalf of Defendant and Respondent.

Lathan & Watkins, James L. Arnone, Winston P. Stromberg and Jennifer K. Roy for Altus Institute Network of Chartered Schools as Amicus Curiae on behalf of Defendant and Respondent.

Pacific Legal Foundation, Ralph W. Kasarda and Joshua P. Thompson for Pacific Legal Foundation as Amicus Curiae on behalf of Defendant and Respondent.

Procopio, Cory, Hargreaves & Savitch, John C. Lemmo, Greta A. Proctor, Merrick A. Wadsworth; California Charter Schools Association, Ricardo J. Soto, Julie Ashby Umansky and Phillipa L. Altmann for California Charter Schools Association as Amicus Curiae on behalf of Defendant and Respondent.

Procopio, Cory, Hargreaves & Savitch, John C. Lemmo, Greta A. Proctor and Merrick A. Wadsworth for Charter Schools Development Center, Julian Charter School, and Diego Valley Charter School as Amici Curiae on behalf of Defendant and Respondent.

Charter schools are "public schools funded with public money but run by private individuals or entities rather than traditional public school districts." (*Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 205 (*Today's Fresh Start*).) In 1992, with the enactment of the Charter Schools Act of 1992 (Ed. Code, § 47600 et seq.) (Charter Schools Act),[1] California became one of the first states in the country to authorize charter schools. In 2002, the Legislature amended the

---

[1] Further undesignated statutory references are to the Education Code.

2

Charter Schools Act to add geographic restrictions for the operation of charter schools. (See §§ 47605, subd. (a)(1), 47605.1.)

This case presents an issue of statutory interpretation of the scope of these geographic restrictions. Specifically, the issue presented is whether the comprehensive statutory scheme governing charter schools permits a charter school--that is authorized by a school district and provides support for nonclassroom-based independent study--to locate a resource center outside the geographic boundaries of the authorizing school district but within the same county.

As we explain, applying well-established rules of statutory construction to the language of the Charter Schools Act, we conclude that the answer is no.

The 2002 amendments generally require charter schools to operate within the geographic boundaries of the authorizing school district. (§ 47605, subd. (a)(1).) There are limited exceptions (§ 47605.1, subds. (c), (d) & (g)) to this restriction, including an exception for a resource center, meeting space, or other satellite facility located in an adjacent county, provided certain conditions are met. (*Id.,* subd. (c).) There are also exceptions where the charter school has been authorized by the county board of education as a county charter school (§ 47605.6.) or by the State Board of Education as a state charter school (§ 47605.8). None of these exceptions applies here.

Shasta Secondary Home School (SSHS) operates a nonclassroom-based charter school, providing educational support for students who are home schooled. The Shasta Union High School District is the authorizing school district for SSHS and is responsible for its oversight. (See §§ 47612, 47615, subd. (a)(2).) SSHS operates two resource centers in Redding which provide educational services, labs, a meeting place for the student and his or her facilitator, work spaces, and some optional classes. In 2013, SSHS opened a third resource center in a room at the East Cottonwood Elementary School. This location is within Shasta County, but outside the boundaries of the Shasta Union

3

High School District.  Instead, it is within the boundaries of plaintiff Anderson Union High School District (AUHSD).

AUHSD brought suit, seeking injunctive and declaratory relief, contending the location of this resource center violated the Charter Schools Act, as well as the charter of SSHS.  AUHSD claimed it was harmed by the location of the resource center because it had lost funding when students within its district chose to go to SSHS.  The trial court denied both injunctive and declaratory relief, finding the geographic and site limitations of the Charter Schools Act do not apply to resource centers.

Because the language of the Charter Schools Act does not support that interpretation, we reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

SSHS is a nonclassroom-based school established in 1999.  Its charter was last renewed in 2011 and expired June 30, 2016.  The Shasta Union High School District authorized the charter and is responsible for oversight of SSHS.  SSHS uses an individualized learning model which consists of a combination of (1) homeschooling, (2) optional group classes, (3) online courses, (4) student driven electives, (5) concurrent enrollment at a campus site of the authorizing school district, and (6) college level courses.

SSHS has two resource centers in Redding, the Gold Street Resource Center and the adjacent Market Street Resource Center.  These resource centers are within the boundaries of Shasta Union High School District and provide students with tutoring, special education services, computer and science labs, and student work spaces.  Students can meet there with their facilitator, a guidance counselor, or the Director of SSHS.  A student must meet with his or her facilitator at least once every 20 days, with a parent or guardian in attendance.  Optional classes are offered at the Gold Street Resource Center.

In July 2013, SSHS opened a third resource center in the East Cottonwood Elementary School (the Cottonwood Resource Center).  This resource center is intended

4

to serve students in southern Shasta County and northern Tehama County. The Cottonwood Resource Center is a one-room facility with four computer work stations, desks, a small library, and a white board. At the resource center, students may check out instructional materials, use the computer workstations, work on assignments, and receive tutoring. The Cottonwood Resource Center does not offer optional classes. It is open three days a week, and is located within Shasta County, but outside the boundaries of the Shasta Union High School District. It is inside the boundaries of AUHSD.

The head of technology at East Cottonwood Elementary School informed AUHSD of this resource center. AUHSD brought a complaint for injunctive and declaratory relief, challenging the legality of the location of the Cottonwood Resource Center. AUHSD sought a temporary restraining order (TRO) and an order to show cause for a preliminary injunction.

The trial court denied the TRO and ordered SSHS to appear and show cause why a preliminary injunction should not be issued restraining and enjoining it from establishing a satellite educational facility within the boundaries of AUHSD.

After a hearing, the trial court denied the preliminary injunction, finding AUHSD failed to show irreparable harm or to establish the likelihood that it would prevail on the merits.

AUHSD filed an amended complaint. It sought injunctive relief, restraining SSHS from operating a resource center within AUHSD's boundaries. It also sought declaratory relief in the form of a declaration that (1) the Cottonwood Resource Center was a "schoolsite" within the meaning of section 47612.5, subdivision (e)(3); (2) SSHS was acting outside the scope of its charter; (3) SSHS had not complied with section 47605.1, subdivision (d), and therefore could not operate a resource center within the boundaries of AUHSD; and (4) section 47605.1, subdivision (c) does not permit SSHS to operate a satellite facility within the boundaries of AUHSD.

The parties stipulated to a trial on the briefs, and waived their right to a bench trial. They provided a joint statement of stipulated facts and documents.

The trial court determined the Cottonwood Resource Center was not a "schoolsite," because the resource center was not used principally for classroom instruction.[2] The court found no statutory restraint on the location of a resource center within the county of the authorizing school district. It found that sections 47605, subdivision (a) and 47605.1, subdivision (d), which restricted the location of satellite facilities, applied only to classroom-based charter schools, and not nonclassroom-based charter schools such as SSHS. The court further found no violation of public policy and no hindrance to oversight of SSHS by locating a resource center in the *same* county, because the Legislature specifically permitted resource centers to be located in an *adjacent* county.

The court entered judgment for SSHS and AUHSD appealed.

**DISCUSSION**

I

*The Charter Schools Act*

A. *General Background*

Article IX, section 5 of the California Constitution requires the Legislature to provide a free public school system. The Legislature has chosen to implement this requirement through local school districts. (*Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1195.) Beginning with the 1990-1991 school year, the Legislature permitted a school district to offer independent study. (§ 51745.) Funding for independent study is limited to pupils in that county or an adjacent county. (§ 51747.3, subd. (b).)

---

[2] As we discuss *post*, AUHSD does not maintain its claim that the resource center was a schoolsite on appeal.

6

In 1992, the Legislature enacted the Charter Schools Act, adding charter schools to the public education system "to provide opportunities for teachers, parents, pupils, and community members to establish and maintain schools that operate independently from the existing school district structure." (§ 47601.) "The Legislature intended its authorization of charter schools to improve public education by promoting innovation, choice, accountability, and competition. [Citations.]" (*Today's Fresh Start, supra,* 57 Cal.4th at pp. 205-206.) Charter schools must be free, nonsectarian, and open to all students; they cannot discriminate against students on the basis of ethnicity, national origin, gender, or disability. (§ 47605, subd. (d).) A charter school must comply with the terms of its charter, the Charter Schools Act, and other specified laws, but it is otherwise exempt from laws governing school districts. (§ 47610.)

Originally, the number of charter schools was limited to 100 and a charter school could be initiated only by a petition signed by a certain number of teachers and submitted to the governing board of the school district. (Former §§ 47602, 47605, subd. (a).) The governing board had discretion to approve the petition and preference was given to petitions demonstrating the capability to provide education to low achieving students. (Former § 47605, subds. (b) & (h).) A charter may be granted for a period of up to five years and may be renewed for additional five-year periods. (§ 47607, subd. (a).)

In 1998, the Legislature enacted Assembly Bill No. 544 (1997-1998 Reg. Sess.) (Assem. Bill No. 544), which "substantially revamped" the Charter Schools Act. (*Wilson v. State Bd. of Education* (1999) 75 Cal.App.4th 1125, 1132 (*Wilson*).) Assembly Bill No. 544 replaced the cap of 100 charter schools with a cap of 250 schools in school year 1998-1999, with 100 more charter schools authorized each successive year. (§ 47602, subd. (a).) The exclusive reliance on teacher signatures on the petition was eliminated; the petition could be signed by a certain number of either parents and guardians or teachers. (§ 47605, subd. (a).) "Gone also is the broad discretion in granting or denying a charter. Now, following review of the petition and the requisite

7

public hearing, the governing board of the district 'shall not deny a petition' unless it makes written findings of fact that: (1) The charter school presents an unsound educational program; (2) petitioners are 'demonstrably unlikely' to succeed in implementing the program; or (3) the petition lacks the required signatures, affirmations or descriptions of program particulars. (§ 47605, subd. (b).) If the school district nonetheless denies a petition, the petitioner can submit to the county board of education or the Board. (*Id*., subd. (j)(1).) Additionally, petitioner can submit directly to the county board of education for a charter school that would serve pupils otherwise directly served by the county office of education. (§ 47605.5.)" (*Wilson,* at p. 1132.)

Other new provisions of Assembly Bill No. 544 provide greater control over charter schools. Teachers in charter school must hold a Commission on Teaching Credentialing certificate or equivalent. (§ 47605, subd. (l).) There are provisions for greater financial accountability. (*Id.*, subd. (b)(5)(I) & (g).) Charter schools must "promptly respond to all reasonable inquiries," including those from the chartering authority or the Superintendent of Public Instruction. (§ 47604.3.) Additionally, the chartering authority can "inspect or observe any part of the charter school at any time" (§ 47607, subd. (a)(1)) and charge the school for supervisorial oversight (former § 47613.7, subd. (a), now § 47613). This control and oversight by public officials legitimizes charter schools. (*California School Bd. Ass'n v. State Bd. of Education* (2010) 186 Cal.App.4th 1298, 1326 (*CSBA*).) Public control and oversight "arguably is constitutionally necessary." (*Today's Fresh Start, supra*, 57 Cal.4th at p. 206; see *Mendoza v. State of California* (2007) 149 Cal.App.4th 1034, 1060-1061 [transfer of authority over part of public school system to entities outside public school system violated California Constitution]; *Wilson, supra*, 75 Cal.App.4th at pp. 1139-1140 [rejecting claim of unconstitutional delegation of legislative powers because charter schools are under control of officers of public schools].)

8

The Legislature made further refinements to the Charter Schools Act in Senate Bill No. 434 (1998-2000 Reg. Sess.) (Sen. Bill No. 434). Charter Schools are required to offer the same number of instructional minutes as school districts, maintain records of pupil attendance, and certify that pupils have participated in state testing. (§ 47612.5, subd. (a).) Charter schools providing independent study must comply with statutory and regulatory provisions relating to independent study and are subject to the same funding restrictions for independent study as other public schools, including the restriction that pupils reside in the same county as or an adjacent county to the charter school. (§§ 47612.5, subd. (b); 51747.3.) For funding purposes, a distinction was made between charter schools that provide " 'classroom-based instruction' " and those that provide (in addition or alternatively) " 'nonclassroom-based instruction.' " "Classroom-based instruction" occurs only under "the immediate supervision and control" of a charter school employee with a teaching credential and 80 percent of the instructional time must be at the "schoolsite." (§ 47612.5, subd. (e)(1), (2).) A "schoolsite is a facility that is used principally for classroom instruction." (*Id.*, subd. (e)(3).) This definition applies to the entire Charter Schools Act. (*Ibid.*) Any instruction that does not meet this definition is " 'nonclassroom-based instruction.' " (*Id.*, subd. (e)(2).)

In 2002, the Legislature made significant amendments to the Charter Schools Act in Assembly Bill No. 1994 (2001-2002 Reg. Sess.) (Assem. Bill No. 1994), adding "stringent geographical restrictions" for the operation of charter schools. (*CSBA, supra,* 186 Cal.App.4th at p. 1307; see §§ 47605, subd. (a)(1), 47605.1.) "The impetus behind those amendments, which were sponsored by the State Superintendent of Public Instruction, was explained in an analysis prepared for the Senate Committee on Education. 'The [State Board] has in practice allowed single charters to be used to authorize the operation of multiple school sites, which are called "satellites" of the charter. Satellites have often operated at considerable distance from the "home" charter. Early this year the Gateway Charter School, chartered by the Fresno Unified School

9

District, was the subject of several newspaper articles and an ongoing law enforcement investigation, concerning allegations that satellites of the Gateway School were operating in violation of several laws. Gateway's charter was revoked by the district governing board who cited the difficulties of keeping track of remote (satellite) operations as a reason why various anomalies were not discovered sooner.' [Citation.] As stated in a comment to another analysis, '[b]y placing a geographic restriction on a charter school's operations, this bill would help clarify a district's sovereignty over public education provided within its boundaries and [would] enhance oversight of charter schools.' [Citation.]" (*CSBA, supra,* 186 Cal.App.4th at pp. 1307-1308.)

B. *Provisions at Issue in the Instant Appeal*

The geographic restrictions contained in Assembly Bill No. 1994 are the subject of this appeal. Under the 2002 amendments, a school chartered by a school district must identify a "single charter school that will operate within the geographic boundaries of that school district." (§ 47605, subd. (a)(1).) The school may operate at multiple sites within the district so long as each location is identified in the petition. (*Ibid.*) Any school receiving a charter from the governing board of a school district or county office of education after July 1, 2002, must locate in accordance with these geographic and site limitations. (§47605.1, subd. (a)(1).) For a school that was chartered and provided educational services prior to July 1, 2002, the geographic and site limitations "only appl[y] to new educational services or schoolsites" established or acquired after July 1, 2002. (§ 47605.1, subd. (e)(1).) A charter school must comply with the requirements of section 47605.1 by the later of June 30, 2005, or expiration of its charter in effect on January 1, 2003, "for schoolsites at which educational services are provided to pupils." (*Id.*, subd. (e)(3).)

There are limited exceptions to these restrictions. Where a charter school provides a majority of its educational services in, and a majority of its pupils are residents of, the county in which it is authorized, it may establish "a resource center, meeting space, or

10

other satellite facility" in an adjacent county, provided the facility is used exclusively for educational support of pupils enrolled in nonclassroom-based independent study. (§ 47605.1, subd. (c).) If a charter school has unsuccessfully attempted to locate a single site within the district to house its entire program, or a temporary site is need during construction or expansion, it may establish one site outside the district, but within the county where the district is located. (*Id.*, subd. (d)(1).) The jurisdictional limitations do not apply to charter schools providing instruction in partnership with the federal Workforce Investment Act of 1998, federal Youth Build or job corps training programs, the California Conservation Corps, and instruction provided to some juvenile court school pupils. (*Id.,* subd. (g).)

Assembly Bill No. 1994 added a new provision authorizing a county board of education to approve a "countywide" charter school in the first instance.[3] The school must operate in "one or more sites within the geographic boundaries of the county." (§ 47605.6, subd. (a)(1).) A county board of education may not approve a countywide charter unless it finds that "the educational services to be provided by the charter school will offer services to a pupil population . . . that cannot be served as well by a charter school that operates in only one school district in the county." (*Ibid*.)

Assembly Bill No. 1994 also authorized "state charter school[s]" which would be permitted to operate without geographic restrictions throughout the state. (§ 47605.8, subd. (a).) Similar to the limitation imposed on county boards as chartering agencies for county charter schools, the State Board of Education may not approve a petition for the operation of a state charter school unless it "finds that the proposed state charter school will provide instructional services of statewide benefit that cannot be provided by a

---

[3] This provision is in addition to section 47605.5, which authorizes a county board of education to grant a charter for a school to "serve pupils for whom the county board of education would otherwise be responsible."

charter school operating in only one school district, or only in one county." (*Id*., subd. (b).)

II

*AUHSD's Contentions*

On appeal, AUHSD contends (1) the geographic limitations in the Charter Schools Act on the location of charter school facilities apply to all charter schools, including those that operate nonclassroom-based programs; (2) the statutory exceptions to these limitations, set forth in section 47605.1, subdivisions (c) and (d), do not apply in this case; (3) the Cottonwood Resource Center is barred because its location is not identified in SSHS's charter; and (4) compelling public policy supports reversal of the judgment.

SSHS objects that these issues are not the same as those AUHSD asked the trial court to decide in its request for declaratory relief and requests that this court limit its review to the issues decided by the trial court.

We agree there has been a change in the emphasis of AUHSD's argument. AUHSD has shifted from its previous argument that the Cottonwood Resource Center is a "schoolsite" as defined in section 47612.5, subdivision (e)(3). As it made clear at oral argument, AUHSD now contends that the scope and nature of services provided at a resource center are immaterial to our analysis. Although phrased somewhat differently, the issues we must decide are the same as those decided by the trial court--whether locating a resource center outside the boundaries of the authorizing school district violates the Charter Schools Act, SSHS's charter, or public policy.

III

*Application of Geographic Restrictions to the Cottonwood Resource Center*

A. *Section 47605*

Section 47605 sets forth the requirements for establishing a charter school that is authorized by a school district, both the requirements of the initiating petition and the requirements for the school. It addresses the location of the charter school. "A petition

12

for the establishment of a charter school shall identify a single charter school that *will operate within the geographic boundaries of that school district*. A charter school may propose to *operate at multiple sites within the school district* if each location is identified in the charter school petition." (§ 47605, subd. (a)(1), italics added.) The charter school may add additional locations later. "After receiving approval of its petition, a charter school that proposes to establish operations at one or more additional sites shall request a material revision to its charter and shall notify the authority that granted its charter of those additional locations. The authority that granted its charter shall consider whether to approve those additional locations at an open, public meeting. If the additional locations are approved, they shall be a material revision to the charter school's charter." (§ 47605, subd. (a)(4).)

This language evinces the unambiguous legislative intent that a charter school authorized by a school district shall be located and operate entirely within the boundaries of the authorizing school district, whether at one or multiple locations. The geographic limitations apply to the *operation* of the charter school. The Cottonwood Resource Center, by providing educational support to students of SSHS, is part of the operation of SSHS. Therefore, the in-district geographic limitation applies to the Cottonwood Resource Center unless there is an applicable exception.

SSHS argues, and the trial court found, that subdivision (a) of section 47605 applies only to classroom-based charter schools, and not to nonclassroom-based charter schools. The reasoning is that classroom-based charter schools and nonclassroom-based charter schools are different, and are treated differently in many areas of the Charter Schools Act besides funding. SSHS contends the Legislature recognized this distinction and set different geographic restrictions for classroom-based and nonclassroom-based charter schools.

This interpretation is untenable. Nothing in subdivision (a) of section 47605 distinguishes between classroom-based and nonclassroom-based charter schools. These

13

terms do not appear in the subdivision; it speaks only generally of a "charter school." Section 47605 is the *only* section that addresses the requirements for establishing a charter school authorized by a school district. If it does not apply to nonclassroom-based charter schools, there is no statutory procedure for petitioning to establish a nonclassroom-based charter school. Since the Legislature intended charter schools to provide independent study (§ 47612.5, subd. (b)), there must be a mechanism for initiating such schools. We will not interpret a statute to eliminate a necessary provision where the Legislature has not done so expressly. (See *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 518 [refusing to interpret statute to implicitly eliminate court's statutory power].) Accordingly, section 47605, subdivision (a), including its geographic restrictions, must apply to *all* charter schools whether classroom-based or nonclassroom-based.

We turn now to certain exceptions in section 47605.1.

B. *Section 47605.1*

As set forth *ante*, section 47605.1 requires charter schools that were granted a charter after July 1, 2002, to "locate in accordance with the geographic and site limitations" of the Charter Schools Act.[4] (§ 47605.1, subd. (a)(1).) The section provides an exception for a resource center, meeting space, or other satellite facility, used for nonclassroom-based independent study, which may be located in an adjacent county,

---

[4] SSHS was granted a charter before 2002, a fact that SSHS ignores in its discussion of section 47605.1, despite the clear statutory language. Subdivision (e) of section 47605.1 addresses charter schools with charters approved before July 1, 2002. As SSHS did not cite to or rely on this subdivision either in the trial court or on appeal, we do not address it. We read SSHS's argument--and sole defense to AUSHD's lawsuit--to be that the Cottonwood Resource Center, and any resource center of any nonclassroom-based charter school, may operate out-of-district simply because the geographic limitations of sections 47605 and 47605.1 do not apply, not because SSHS has any grandfathered rights under subdivision (e) of section 47605.1 because it received its charter before July 1, 2002.

14

provided certain conditions are met.[5]  (*Id*, subd. (c).)  There is also an exception permitting a charter school to locate a site outside the boundaries of the authorizing school district, but within the same county, when the charter school is unable to locate within the boundaries of the authorizing school district.  (*Id.*, subd. (d).)  There is no dispute that the Cottonwood Resource Center does not fall within either of these exceptions.

SSHS contends the geographic and site limitations on charter schools apply only to sites and schoolsites and the Cottonwood Resource Center does not meet the definition of a schoolsite because it is not "used principally for classroom instruction."  (§ 47612.5, subd. (e)(3).)  However, the premise of this argument--that a "site" and a "schoolsite" are the same--is incorrect.  SSHS contends the terms "site" and "schoolsite" are used "interchangeably" and both refer only to classroom-based facilities.  As an example of this interchangeable use, SSHS cites to subdivision (a) of section 47605 and subdivision (d) of section 47605.1.  These subdivisions, however, use only the term "site" and not the term "schoolsite," so they do not establish an interchangeable use of the two terms. Further, SSHS's proposed interpretation that "site" means "schoolsite" is contrary to a well-established rule of statutory construction.  "Where different words or phrases are used in the same connection in different parts of a statute, it is presumed the Legislature intended a different meaning.  [Citation.]"  (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1117.)

"When construing the meaning of words in a statute, courts should first look to the plain dictionary meaning of the word unless it has a specific legal definition.  [Citations.] Each word, phrase and provision in a statute is presumed to have a meaning and to perform a useful function.  [Citation.]"  (*Ceja v. J. R. Wood, Inc.* (1987) 196 Cal.App.3d

---

[5]  Recall that funding for independent study is limited to pupils in that county or an adjacent county.  (§ 51747.3, subd. (b).)

1372, 1375-1376.) The term "schoolsite" has a particular meaning, as set forth in section 47612.5, subdivision (e)(3), requiring principal use for classroom instruction. There is no statutory or other specific legal definition for "site" so we use the plain dictionary meaning. A site is the "place where a structure or group of structures was, is, or is to be located" (The American Heritage College Dictionary (4th ed. 2007) 2nd. col., p. 1296), or the "place where something stands." (Encarta World English Dictionary (1999) mid. col., p. 1676.) "Site" speaks to location, while "schoolsite" speaks to use. The Legislature appropriately used the term "site" when addressing the geographic restrictions on charter schools. A resource center is a facility (see § 47605.1, subd. (c)) and thus has a location or site.

SSHS relies on the permissive nature of the Education Code and the flexibility granted charter schools to support its position. Section 35160 allows a school district to initiate and carry on any activity which is not in conflict with or inconsistent with any law. The Charter Schools Act was intended to give flexibility to charter schools. (*Wilson, supra,* 75 Cal.App.4th at pp. 1140-1141; see § 47601.) Section 47610, known as the mega-waiver statute, exempts charter schools from most of the laws that govern school districts. SSHS asserts that in keeping with the permissive nature of the code and the flexibility granted charter schools "in-county resource centers are permitted, as no law prohibits them."

As we have shown, this assertion is not accurate. Sections 47605 and 47605.1 prohibit such in-county resource centers.

C. *Absurdity*

SSHS contends that interpreting the Charter Schools Act to prohibit placement of a resource center outside the boundaries of the authorizing school district, although within the same county, results in an absurdity. It reasons that since subdivision (c) of section 47605.1 permits a resource center to be located in an adjacent county, it is absurd to read the Charter Schools Act to prohibit a resource center in the same county.

16

The plain meaning of a statute will not be followed when it leads to absurd results, frustrating the manifest purpose of the law. (*Wells Fargo Bank v. Superior Court* (1991) 53 Cal.3d 1082, 1098.) "There are few, if any, sources guiding an appellate court on how to apply the absurdity exception to the 'plain meaning rule.' " (*People v. Harbison* (2014) 230 Cal.App.4th 975, 986-987 (dis. opn. of Yegan, J.).) "This exception should be used most sparingly by the judiciary and only in extreme cases else we violate the separation of powers principle of government. (Cal. Const., art. III, § 3.) We do not sit as a 'super-legislature.' [Citation.]" (*Unzueta v. Ocean View School Dist.* (1992) 6 Cal.App.4th 1689, 1698.) "[E]xcept in the most extreme cases where legislative intent and the underlying purpose are at odds with the plain language of the statute, an appellate court should exercise judicial restraint, stay its hand, and refrain from rewriting a statute to find an intent not expressed by the Legislature." (*Id*. at p. 1700.)

We do not find the accurate interpretation of this statute to be so absurd as to permit us to rewrite it. Assembly Bill No. 1994 added a provision to permit a county board of education to authorize a countywide charter school "that operates at one or more sites within the geographic boundaries of the county and that provides instructional services that are not generally provided by the county office of education." (§ 47605.6, subd. (a)(1).) A countywide charter school can only be approved after a finding "that the educational services to be provided by the charter school will offer services to a pupil population . . . that cannot be served as well by a charter school that operates in only one school district in the county." (*Ibid*.) The Legislature could have reasonably believed that section 47605.6 was sufficient to address the issue of locating resource centers outside the boundaries of the authorizing school district and within the same county; charter schools that wished to operate at multiple sites throughout the county could apply for a county charter. Operating a resource center within the county but outside the boundaries of the authorizing school district, without a county charter, in effect creates a countywide charter school without the necessary finding for its establishment.

17

SSHS reads the adjacent county provision of section 47605.1, subdivision (c) as the *only restriction* on the location of a resource center. We disagree with that reading. The provision is permissive, not restrictive. It is not a restriction on the location of a resource center, but an exception to the general requirement of section 47605 that limits a charter school to operating within the boundaries of the authorizing school district. Subdivision (c) of section 47605.1 begins, "Notwithstanding any other law . . . ." "This 'term of art' expresses a legislative intent 'to have the specific statute control despite the existence of other law which might otherwise govern.' [Citation.]" (*People v. Franklin* (1997) 57 Cal.App.4th 68, 74.) In other words, this initial language in subdivision (c) of section 47605.1 reflects the Legislature's understanding (and intent) that resource centers are subject to the same geographic restriction (within the boundaries of the authorizing school district) as any other facility of a charter school with this one exception. If there were no restrictions on the location of a resource center, the exception expressed by section 47605.1, subdivision (c) would not have been necessary. "We ordinarily reject interpretations that render particular terms of a statute mere surplusage, instead giving every word some significance. [Citation.]" (*City of San Jose v. Superior Court* (1993) 5 Cal.4th 47, 55.)

SSHS contrasts the preamble of subdivisions (c) and (d) of section 47605.1. Subdivision (c) begins, "Notwithstanding any other law . . . ." In contrast, subdivision (d) begins, "Notwithstanding subdivision (a) or subdivision (a) of Section 47605 . . . ." Subdivision (d) provides an exception for a charter school to establish a site outside the boundaries of the authorizing school district, but within the county, under certain conditions. SSHS argues that because section 47605.1, subdivision (c) does not specify subdivision (a) of section 47605 and subdivision (a) of section 47605.1 in its "notwithstanding" preamble, these sections do not apply to resource centers. We find this argument unconvincing. The broader "notwithstanding" preamble of section 47605.1, subdivision (c) was necessary to override laws other than section 47605,

18

subdivision (a) and section 47605.1, subdivision (a).  For example, the exception in section 47605.1, subdivision (c) permits a county charter school to establish a resource center in an adjacent county, notwithstanding the provisions of section 47605.6, subdivision (a)(1) that restrict operation of a county charter school to "the geographic boundaries of the county."

D.  *Interpretation by the Department of Education*

SSHS contends its position that the Cottonwood Resource Center is not governed by sections 47605 and 47605.1 is supported by the interpretation offered by the Department of Education.  In 2002, the Department of Education issued a memorandum update on recent legislation.  It outlined the new geographic limitations in Assembly Bill No. 1994.  The memorandum stated:  "The site restrictions do not apply to facilities used as resource centers, meeting spaces, or satellite sites used exclusively for non-classroom based independent study if a majority of the charter school pupils are residents of the county in which the charter is authorized."

"An agency interpretation of the meaning and legal effect of a statute is entitled to consideration and respect by the courts; however, unlike quasi-legislative regulations adopted by an agency to which the Legislature has confided the power to 'make law,' and which, if authorized by the enabling legislation, bind this and other courts as firmly as statutes themselves, the binding power of an agency's *interpretation* of a statute or regulation is contextual: Its power to persuade is both circumstantial and dependent on the presence or absence of factors that support the merit of the interpretation."  (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 7.)  "Considered alone and apart from the context and circumstances that produce them, agency interpretations are not binding or necessarily even authoritative."  (*Id*. at p. 8.)

Here the agency interpretation simply summarizes the key provisions of section 47605.1.  There is no indication that the agency is drawing upon its particular expertise or that it had any role in drafting the legislation.  Rather, the agency was simply

19

summarizing--and thus interpreting--the statute.  The expertise for that task lies in the courts, not the agency.  (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1389 ["The final meaning of a statute . . . rests with the courts"].)  The memorandum's summary appears to track subdivision (c) of section 47605.1, but without any reference to establishing a resource center in an adjacent county.  Because the agency interpretation is thus incomplete, and, as set forth *ante*, inconsistent with the statutory language, we decline to adopt it.

In the trial court, AUHSD offered a competing interpretation by the Department of Education.  In an e-mail dated June 20, 2007, the Director of the Charter Schools Division of the Department of Education recognized that some nonclassroom-based charter schools had established resource centers outside the boundaries of the authorizing school district but within the same county.  She opined, "There does not appear to be any specific statutory right to this placement."  The trial court sustained SSHS's objection to this e-mail.  AUHSD contends the trial court abused its discretion in excluding this evidence.  We find no abuse of discretion.  For the same reasons that we decline to adopt the agency interpretation offered by SSHS, we find no error in excluding this less formal agency interpretation.

E.  *Public Policy Considerations*

Both parties contend public policy considerations support their position.  AUHSD argues Assembly Bill No. 1994, with its geographic limitations, was enacted to provide greater oversight of charter schools, oversight that is necessary due to past mismanagement of public monies.  SSHS counters that since the Legislature permits a resource center in an adjacent county, appropriate oversight can occur in the same county.  SSHS further argues that the Charter Schools Act was designed to provide competition (§ 47601, subd. (g)), and AUHSD is trying to stifle competition.  SSHS and

20

some amici curiae argue restricting the location of resource centers harms students, particularly those who may have difficulty traveling to more distant resource centers.[6]

Although initially intriguing and possibly persuasive when considered as the over-arching policy objectives that they are, these policy arguments are not persuasive when applied to the instant case. This is because they are divorced from the actual unambiguous language of the statutes at issue here. In construing a statute, courts may consider public policy, but only if the language of the statute is ambiguous. (*Estate of Britel* (2015) 236 Cal.App.4th 127, 138.) Considerations of policy do not permit us to ignore the plain language of the statute. (*Mercury Ins. Co. v. Vanwanseele-Walker* (1996) 41 Cal.App.4th 1093, 1103.) " '[N]o legislation pursues its purposes at all costs. Deciding what competing values will or will not be sacrificed to the achievement of a particular objective is the very essence of legislative choice—and it frustrates rather than effectuates legislative intent simplistically to assume that *whatever* furthers the statute's primary objective must be the law. Where, as here, "the language of a provision . . . is sufficiently clear in its context and not at odds with the legislative history, . . . '[we should not] examine the additional considerations of "policy" . . . that may have influenced the lawmakers in their formulation of the statute.' " ' [Citation]; accord, *Foster v. Workers' Comp. Appeals Bd.* (2008) 161 Cal.App.4th 1505, 1510, [purpose of law cannot supplant legislative intent expressed in particular statute].)" (*County of Sonoma v. Cohen* (2015) 235 Cal.App.4th 42, 48.)

---

[6] We have received and considered amici curiae briefs from California Charter School Boards Association, Charter Schools Development Center, Julian Charter School, Diego Valley Charter School, Pacific Legal Foundation, Dehesa School District, Julian Union School District, Mountain Empire Unified School District, and Altus Institute Network of Chartered Schools in support of SSHS; and from California School Boards Association Education Legal Alliance in support of AUHSD, as well as the responses of AUHSD and SSHS to the amici briefs.

Because we have interpreted the geographic limitations of the Charter Schools Act based on the plain language of the statute, we do not entertain the various policy arguments.

F. *Conclusion*

In statutory interpretation, our fundamental task "is to determine the Legislature's intent so as to effectuate the law's purpose. [Citation.]" (*People v. Murphy* (2001) 25 Cal.4th 136, 142.) "We look first to the plain meaning of the statutory language, giving the words their usual and ordinary meaning. [Citation.] If there is no ambiguity in the statutory language, its plain meaning controls; we presume the Legislature meant what it said. [Citation.]" (*People v. Garcia* (2002) 28 Cal.4th 1166, 1172.) Here the plain meaning of sections 47605 and 47605.1 is that a charter school authorized by a school district is to be located and operate entirely within the geographic boundaries of the authorizing school district, unless one of the specific exceptions of section 47605.1 applies. Because the Cottonwood Resource Center does not fall within any of the exceptions of subdivisions (c) or (d) of section 47605.1 (and SSHS offers no other possible exception), its location outside the boundaries of the authorizing Shasta Union High School District does not comply with the Charter Schools Act.[7]

IV

*Requests for Judicial Notice*

We have received eight requests for judicial notice, many relating to materials of legislative history of various statutes.[8] We may take judicial notice of any matter

---

[7] AUHSD contends the Cottonwood Resource Center is barred because SSHS may not establish a location that is not identified in its charter. Because we have resolved the issue presented by the parties under the Charter School Act, we need not address this alternative contention.

[8] "Even though we will grant motions for judicial notice of legislative history materials without a showing of statutory ambiguity, we do so with the understanding that the panel

22

specified in Evidence Code section 452. (Evid. Code, § 459.) We address each request in turn.

AUHSD requests that we take judicial notice of various versions of Assembly Bill No. 1994 and the Senate Floor Analysis of the same. These are appropriate matters of judicial notice. (*Kaufman, supra,* 133 Cal.App.4th at pp. 31-32.) We grant the request. In a supplemental request, AUHSD requests that we take judicial notice of the API scores and school profiles of AUHSD and SSHS. As this material is irrelevant, we deny the request.

SSHS requests that we take judicial notice of the final versions and analyses of Senate Bill No. 434, requiring charter schools to comply with requirements relating to instructional minutes and independent study, and Senate Bill No. 740 (2000-2001 Reg. Sess.), relating to funding for nonclassroom-based instruction. These are proper subjects of judicial notice. (*Kaufman, supra,* 133 Cal.App.4th at pp. 31-32.) We grant the request as to the materials relating to Senate Bill No. 434, but deny it as to Senate Bill No. 740 because these materials are not relevant to our consideration of the issues in this case. In a supplemental request, SSHS asks that we take judicial notice of two earlier versions of Assembly Bill No. 1994 to respond to arguments by amicus California School Boards Association Education Legal Alliance. We have already taken judicial notice of the August 15, 2002, version at AUHSD's request. We deny the request as to the June 19, 2002, version because it is not relevant to our consideration of the issues in this case.

Amicus California School Boards Association Education Legal Alliance requests we take judicial notice of five documents. The first is an opinion of the Legislative Counsel as to a school district granting a charter for a charter school in another district. While we may take judicial notice of an opinion by Legislative Counsel (*Nguyen v.*

---

ultimately adjudicating the case may determine that the subject statute is unambiguous, so that resort to legislative history is inappropriate." (*Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc*. (2005) 133 Cal.App.4th 26, 30 (*Kaufman*).)

*Nguyen* (2008) 158 Cal.App.4th 1636, 1658, fn. 22), we deny the request as the opinion is not helpful to our resolution of this case. Three of the documents are legislative history materials for Assembly Bill No. 1994. We grant the request as to these materials. The final document is a judgment of the San Diego Superior Court in the case *San Diego Unified School District v. Alpine Union School District,* which presents a related issue. Amicus requests judicial notice of this judgment to show "the statewide importance of the issues presented in this appeal" and to demonstrate legal error in the trial court's analysis. Ordinarily, we will not take judicial notice of a judgment in another case. (*Alisal Sanitary Dist. v. Kennedy* (1960) 180 Cal.App.2d 69, 80.) We see no reason to depart from the usual rule here. The statewide importance of the case was set forth in SSHS's motion for calendar preference, which we granted in part, and we make our own determination of the correctness of the trial court's analysis and decision. We deny the request.

Amici California Charter School Association et al. request judicial notice of Senate Bill No. 1563 (1989-1990 Reg. Sess.) relating to independent study programs. We deny the request because this material is not relevant to our consideration of the issues in this case.

After this case was set for oral argument, AUHSD requested judicial notice of various agendas, partial transcripts of meetings, and other materials relating to the approval of Audeo Charter School II, which has two out-of-district but in-county resource centers, to show the Department of Education's interpretation of sections 47605 and 47605.1.

In response to AUHSD's request, SSHS filed both an opposition and request to take judicial notice of a 2002 policy of the State Board of Education establishing the Advisory Commission on Charter Schools, the complete transcripts of meetings of both the Advisory Commission on Charter Schools and the State Board of Education as to the approval of Audeo Charter School II, and the square mileage of various counties in

24

California.  As we explained *ante*, we decline to adopt agency interpretations of sections 47605 and 47605.1.

We deny both requests because the materials are not relevant to our consideration of the issues in this case.

## DISPOSITION

The judgment is reversed.  The matter is remanded to the trial court for further proceedings consistent with this opinion, including the determination of damages, if any. AUHSD shall recover costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


                                                    /s/
                                          Duarte, J.

We concur:


      /s/
Raye, P. J.



      /s/
Renner, J.

25