Filed 3/10/25  Inglewood Unified Schoot Dist. v. Lennox School Dist. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| INGLEWOOD UNIFIED SCHOOL DISTRICT, | B327838 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 20STCP01934) |
| v. | |
| LENNOX SCHOOL DISTRICT, | |
| Defendant and Respondent. | |
| ——————————————— | |
| CENTURY COMMUNITY CHARTER SCHOOL, INC., | |
| Real Party In Interest and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mitchell L. Beckloff, Judge.  Affirmed.

Dannis Woliver Kelley, Sue Ann Salmon Evans and Keith A. Yeomans for Plaintiff and Appellant.

Young, Minney & Corr, Paul C. Minney and Kevin M. Troy, for Defendant and Respondent and Real Party in Interest and Respondent.

\* \* \* \* \* \*

A few months before California law changed to curtail the practice of charter schools operating outside their governing districts' geographic boundaries, one school district renewed a charter school's petition to operate for another five years at a location within another district's geographic boundaries.  That other district in whose boundaries the charter school operated filed a petition for writ of mandate, urging that the renewal was foreclosed by the imminent change in law as well as under current law.  The trial court denied the writ.  Because this was correct, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I.     Facts

#### A.     *The school districts*

Inglewood and Lennox are suburbs of Los Angeles, California.  Lennox is very small, with an area of only 1.3 square miles.  Each of these cities has its own school district.

### B. *The charter school*
#### 1. *Establishment of its charter*

In 2004, Century Community Charter School, Inc. (Century) petitioned the Inglewood Unified School District (Inglewood) to establish a charter school under the Charter Schools Act of 1992 (the Act) (Ed. Code, § 47600 et seq.)[1] in a facility rented from a church on Maple Street in Inglewood. The charter school was to educate approximately 450 middle school students. Inglewood denied the petition.

Later that year, Century petitioned the neighboring Lennox School District (Lennox) to establish its charter school at the same location on Maple Street in Inglewood. Although this location is outside Lennox's geographic boundaries, the Act at that time authorized one district to establish an out-of-district charter school in the same county as long as an in-district location was "unavailable" and advance notice was given to the district in whose boundaries the charter school would operate, as well as to the county superintendent of schools and to the state superintendent of schools. (Former § 47605, subd. (a)(5)(A).) Century conducted a real estate search and provided documentation that no location suitable for its school was available within Lennox's boundaries, and also provided proper notice. Lennox voted to approve Century's charter.

Century commenced operations on August 19, 2004.
#### 2. *Renewals of its charter*

Century subsequently asked Lennox to renew its charter; the two most recent renewals are pertinent to this appeal.

---

[1] All further references are to the Education Code unless otherwise indicated.

### a. In 2015

On April 28, 2015, Lennox voted to renew Century's charter to continue operating the school between July 1, 2015 and June 30, 2020.

### b. In 2019

On October 3, 2019, the Governor signed Assembly Bill No. 1507 (AB 1507) into law. That bill amended the Act to prohibit renewal of any out-of-district charter school absent written consent or authorization of the district in whose boundaries that charter school operates. (§ 47605, subd. (a)(5)(A).) The amendment was to take effect on January 1, 2020.

In the fall of 2019, Century submitted a petition to Lennox to renew its charter.

On December 10, 2019, and under the pre-AB 1507 law, Lennox voted to renew Century's charter to continue operating for another five years, between July 1, 2020 and June 30, 2025.[2]

## II. Procedural Background

In June 2020, Inglewood sued Lennox and Century for (1) a writ of mandate and injunctive relief directing Lennox to deny Century's 2019 petition for renewal of its charter asserting that Lennox failed to adhere to the laws governing the renewal of an out-of-district charter school, and (2) declaratory relief.[3]

---

[2] In 2021, Lennox's charter was extended by operation of law for two additional years, to June 30, 2027. (§ 47607.4 [categorically extending all charters expiring between January 1, 2022 and June 30, 2025 "by two years"].)

[3] Inglewood also sought a writ of mandate due to Lennox's alleged failure to comply with the California Public Records Act (Gov. Code, § 7920.000 et seq.), but does not press this claim on appeal.

In May 2022, Inglewood filed a motion seeking issuance of the writ of mandate.[4]  After a full round of briefing and a hearing in August 2022, the trial court on October 31, 2022 issued an order denying Inglewood's motion, denying the writ petition and dismissing the declaratory relief claim as moot.  Specifically, the court ruled that AB 1507's stricter rules governing renewal of an out-of-district charter did not apply because "the focus [of the statute governing the renewal procedure] is the date the petition to renew a charter is submitted," and the petition here was filed *before* AB 1507's effective date.  The court further ruled that Lennox and Century met the pre-AB 1507 law governing renewal of an out-of-district charter because Inglewood's sole objections to renewal under those operative rules—namely, that Century had not conducted a new study showing there were no available sites for the school within Lennox's geographic boundaries and that Century had not given notice—were irrelevant because those rules "apply at the time a district considers an initial petition to *establish* a charter" school and not to a petition to *renew* a charter.  (Italics added.)

After judgment was entered, Inglewood timely filed this appeal.

## DISCUSSION

Inglewood argues that the trial court erred in denying its petition for a writ of mandate because (1) AB 1507 applies and bars Lennox from renewing Century's charter, and, alternatively, (2) denial of Century's renewal petition is mandated under pre-AB 1507 law because the requirements for renewal of a charter under that law are still not met.

---

4  By this time, the trial court had overruled a demurrer to Inglewood's petition and complaint.

5

A traditional writ of mandate will issue only if the petitioning party "establish[es]" that the responding party—here, Lennox—"has 'a clear, present, and usually ministerial duty to act.'" (*Coast Community College Dist. v. Commission on State Mandates* (2022) 13 Cal.5th 800, 815; Code Civ. Proc., § 1085 [mandate may "compel the performance of an act which the law specifically enjoins"]; see *California School Bds. Assn. v. State Bd. of Education* (2010) 186 Cal.App.4th 1298, 1314, fn. 12 (*CSBA*) [writ petitions regarding establishing or renewing a charter school under the Act "sound[] in traditional mandamus"].) "'Mandate will not issue if the duty is . . . mixed with discretionary power.'" (*Coast Community*, at p. 815; *Squire v. County of Los Angeles* (2018) 22 Cal.App.5th 16, 22 ["'Mandamus . . . does not lie to control the exercise of discretion unless under the facts, discretion can only be exercised in one way'"].) In reviewing a trial court's judgment on a petition for a traditional writ of mandate, we review the court's factual findings for substantial evidence, review de novo its conclusions on issues of law (including questions of statutory interpretation), and review de novo the application of the law to any undisputed facts. (*CV Amalgamated LLC v. City of Chula Vista* (2022) 82 Cal.App.5th 265, 280.)

I.     **Does AB 1507 Apply?**

AB 1507 amended the Act—and, specifically, section 47605, subdivision (a)(5)(A)—to further restrict the operation of out-of-district charter schools. As amended, section 47605 provides that a "charter school that established one site outside the boundaries of the school district . . . before January 1, 2020, may continue to operate that site until the charter school submits a request for the renewal of its charter petition." (§ 47605, subd. (a)(5)(A).)

6

"To continue operating the site [thereafter], the charter school" must either: (1) "before submitting the request for the renewal of the charter petition, obtain approval in writing from the school district where the site is operating," or (2) "[s]ubmit a request for the renewal of the charter petition . . . to the school district in which the charter school is located." (*Ibid.*)

It is undisputed that Century did not satisfy AB 1507's stricter requirements for renewal of its charter because Century did not obtain written approval from Inglewood and did not submit its renewal petition to Inglewood.

Thus, the validity of Lennox's approval of Century's renewal petition turns, at the outset, on whether AB 1507 applies to the renewal petition Century presented to Lennox in 2019.

Under the Act, "California became one of the first states in the country to authorize charter schools," which are "'public schools funded with public money but run by private individuals or entities rather than traditional public school districts.'" (*Anderson Union High School Dist. v. Shasta Secondary Home School* (2016) 4 Cal.App.5th 262, 267-268 (*Anderson*), quoting *Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 205.) Charter schools are meant to "provide opportunities for teachers, parents, pupils, and community members to establish and maintain schools that operate independently from the existing school district structure." (§ 47601.) Although their operations are independent, California's public school districts and other educational authorities nevertheless provide "oversight" by "approv[ing] their charters." (*CSBA, supra,* 186 Cal.App.4th at p. 1305.) Approval is a two-step process under the Act. First, a prospective charter school must petition a school district (or,

7

failing that, a county board of education) to establish its charter. (§§ 47605, subd. (a) [school district], 47605.5 [county board of education].)[5]  Second, and once established, the charter school must petition the authorizing district for renewal of its charter for a specific term of years (currently, a term of two years, or five to seven years).  (§§ 47607, subd. (c)(2)(E) [renewal for "a period of between five and seven years"], 47607.2 [two years].)

As this general summary of the Act's procedures indicates, a charter school's charter is renewed by the authorizing school district *prior to* the commencement of the renewed term of operation.  Here, Lennox's renewal of Century's charter occurred in December 2019 and thus *before* AB 1507's January 1, 2020 effective date, while Century's renewed term of operation commenced on July 1, 2020 and thus *after* AB 1507's January 1, 2020 effective date.  Which version of the law controls turns on determining which act—the approval of the renewal petition or the commencement of the renewed term—is the pertinent act "necessary to trigger application" of section 47605 because if the triggering act "was *completed* before the [amendment's] effective date," then the law as provided by AB 1507 does not control. (*People v. Grant* (1999) 20 Cal.4th 150, 157; accord, *Horsemen's Benevolent & Protective Assn. v. Valley Racing Assn.* (1992) 4 Cal.App.4th 1538, 1550 [an amendment to the law does not apply to a cause of action once all elements of the cause of action have accrued].)

---

**5**      For a time, the Act also authorized the State Board of Education to authorize charter schools.  (See former § 47605.8; *Today's Fresh Start*, *supra*, 57 Cal.4th at p. 206.)  The Act was amended to consolidate that authority in the hands of the local school districts.  (§ 47605.9, subd. (b).)

We conclude that the triggering act is the approval of the renewal petition. The focus of section 47605, subdivision (a)(5)(A) is the act of petitioning the authorizing district for renewal of the charter. AB 1507's amendment to that provision allows for operation of an out-of-district charter school "until the charter school *submits a request* for the renewal of its charter petition." (§ 47605, subd. (a)(5)(A), italics added.) It also conditions the continued operation of such a school under a renewed charter on either obtaining written approval of the school district where the school is sited in support of the "request for the renewal" or submitting the "request for the renewal" to that district. (*Ibid.*) Because AB 1507 makes the renewal petition its trigger,[6] a renewal petition like Century's that was approved prior to AB 1507's effective date is unaffected by its provisions.

Inglewood resists this conclusion with what distills down to three arguments.

First, Inglewood argues that Lennox was *obligated* to deny Century's petition for renewal—even though it was submitted prior to AB 1507's effective date—because "[a]n agency cannot authorize a future act that will be illegal at the time the act is commenced." For support, Inglewood cites a number of decisions in which local zoning boards denied construction permits on the basis of changes in zoning laws that were about to take effect; specifically, Inglewood cites *Chas. L. Harney v. Board of Permit Appeals* (1961) 195 Cal.App.2d 442 and *Brougher v. Board of Public Works* (1928) 205 Cal. 426. We reject this argument. For starters, the authority Inglewood cites is inapt: *Harney* and

---

[6] Because *the statute* defines the trigger, Inglewood's opinion that the start of the renewed term is more "naturally . . . the operative point in time" is irrelevant.

*Brougher* do no more than reaffirm that a local board retains discretion to deny a permit application on the basis of a future local law that will take effect before the application is finally approved (*Harney*, at pp. 446-447; *Brougher*, at pp. 429-430, 434-435); they do not support the proposition that a local board (here, a school district) loses discretion to grant a petition (here, a renewal petition) on the basis of existing law when that petition would be finally granted prior to the effective date of a statewide statute. (Accord, *Gabric v. City of Rancho Palos Verdes* (1977) 73 Cal.App.3d 183, 203 [amendment "passed after final administrative decision cannot support denial of . . . application for [a] permit"].) What is more, the principle Inglewood extrapolates—that an agency is obligated to implement a new law even before its effective date—would convert every piece of legislation into urgency legislation that takes effect upon its passage (if not earlier), even though the California Constitution limits urgency legislation to those bills "necessary for immediate preservation of the public peace, health, or safety" and requires a two-thirds vote. (Cal. Const., art. IV, § 8, subd. (d).)

Second, Inglewood argues that allowing local school districts to approve renewal petitions prior to AB 1507's effective date undermines the Legislature's intent in enacting AB 1507. We disagree. The Legislature in enacting AB 1507 evinced no intent to immediately mandate the denial of all charter renewal petitions: It did not attempt to classify AB 1507 as an urgency measure, and thus left its effective date several months out; nor did the Legislature in AB 1507 limit how far in advance a renewal petition could be filed, thereby leaving it open for charter

10

schools to seek renewal in the gap between AB 1507's enactment and its effective date.[7]

Third and finally, Inglewood argues Lennox acted maliciously in racing against time to renew Century's charter prior to AB 1507's effective date. But there is nothing untoward about taking action before an amendment's effective date. (E.g., *River Garden Retirement Home v. Franchise Tax Bd.* (2010) 186 Cal.App.4th 922, 944 [describing case where taxpayer sought to "take advantage of [a] loophole . . . before Congress" changed the law].[8]

## II. Was Lennox Obligated to Deny Century's Renewal Petition Under the Pre-AB 1507 Law?

Prior to the enactment of AB 1507 (and at the time of the approval of Century's renewal petition in December 2019), section 47607 empowered an authorizing school district to renew a school's charter "for a period not to exceed five years" and provided that "[r]enewals . . . of charters are governed by the standards and criteria described in [s]ection 47605, and shall include, but not be limited to, a reasonably comprehensive

---

[7] Inglewood's further argument that a renewal petition granted prior to AB 1507's effective date must take immediate effect—such that the five-year renewal period at issue here began to tick immediately upon Lennox's vote renewing Century's charter—fails for the same reason: AB 1507 nowhere sets forth such a requirement. Indeed, Inglewood did not even request such a curtailment below.

[8] Inglewood also argues that our interpretation of AB 1507 "would compel a charter school to cease out-of-district operation[s] as soon as the charter school submitted its charter renewal petition." We frankly do not understand this argument.

11

description of any new requirement of charter schools enacted into law after the charter was originally granted or last renewed." (Former § 47607, subds. (a) & (b).) Prior to the enactment of AB 1507 (and at the time of Century's renewal petition in December 2019) and as pertinent here, section 47605 provided:[9]

> "A charter school that is unable to locate within the jurisdiction of the chartering school district may establish one site outside of the boundaries of the school district, but within the county in which that school district is located, if the school district within the jurisdiction of which the charter school proposes to operate is notified in advance of the charter petition approval, the county superintendent of schools and the Superintendent are notified of the location of the charter school before it commences operations, and either of the following circumstances exist:
>
> (A) The school has attempted to locate a single site or facility to house the entire program, but a site or facility is unavailable in the area in which the school chooses to locate.
>
> (B) The site is needed for temporary use during a construction or expansion project."

---

[9] It also detailed the requirements for the number of signatures necessary for a "petition for the establishment of a charter school" (former § 47605, subds. (a)(1), (a)(2), (a)(3)), and required applications to "provide financial statements that include a proposed first-year operational budget" (former § 47605, subd. (g)).

(Former § 47605, subd. (a)(5)(A).)[10]

Inglewood argues that Lennox was obligated to deny Century's charter renewal petition because renewal of a charter under section 47607 looks to the "standards and criteria described in [s]ection 47605" and Century did not meet two of section 47605, subdivision (a)(5)(A)'s requirements—specifically, Century (1) did not provide evidence that a site was unavailable within the Lennox geographic boundaries at the time of its renewal petition in 2019, and (2) failed to provide advance notice to Inglewood, the county board of education, or the superintendent.  Lennox responds that section 47607's *renewal* provisions do not incorporate the portions of section 47605 aimed at the *establishment* of a charter school, and thus do not incorporate the location and notice requirements of subdivision (a)(5)(A).

Determining whether the pre-AB 1507 version of the Act requires an out-of-district charter school seeking to renew its charter to show, *at the time of the renewal petition*, the unavailability of any sites within the geographic boundaries of its authorizing district and to provide advance notice presents a question of statutory interpretation.  We start with the statute's plain text (*De La Torre v. CashCall, Inc.* (2018) 5 Cal.5th 966, 981), although the Act is admittedly not "a model of clarity" (*CSBA, supra*, 186 Cal.App.4th at p. 1316).  We can also look to the Act's legislative history, including how it has evolved. (*Lockheed Martin Corp. v. Workers' Comp. Appeals Bd.* (2002) 96

---

**10**    A different statute governs if a charter school wishes to operate a "resource center, meeting space, or other satellite facility" outside the authorizing district's boundaries.  (Former § 47605.1.)  That statute is not implicated here.

13

Cal.App.4th 1237, 1241, 1246; *Grassi v. Superior Court* (2021) 73 Cal.App.5th 283, 301, fn. 9 ["A statute's legislative history controls over the canons of statutory construction where the history provides clues to legislative intent"].) And we can look for contextual clues that indicate whether one meaning is more consistent with the Legislature's purpose and avoids results at odds with that purpose. (*De Vries v. Regents of University of California* (2016) 6 Cal.App.5th 574, 592; *In re D.B.* (2014) 58 Cal.4th 941, 946.)

Although the plain text of former section 47607 states that "[r]enewals . . . of charters are governed by the standards and criteria described in [s]ection 47605," we conclude that this text does not obligate authorizing school districts to adhere to each and every requirement of section 47605 when renewing a charter. We come to this conclusion for two reasons.

First, the language in former section 47607 incorporating the "standards and criteria described in [s]ection 47605" was added to the Act in 1998 (Stats. 1998, ch. 34, § 8 (A.B. 544)), which is *before* section 47605 was amended in 2002 to impose restrictions on out-of-district charter schools (*Anderson, supra*, 4 Cal.App.5th at pp. 271-273 [discussing 1998 and 2002 additions to the Act]). Thus, the Legislature did not exhibit a contemporaneous intent to incorporate former section 47605's out-of-district restrictions to renewal petitions.

Second, the text of former section 47607 cannot reasonably be read to incorporate *all* of former section 47605's requirements. A few of those requirements pertain to the *establishment* of a charter school, such as (1) getting signatures on a petition to establish a charter school, (2) compiling estimates of first-year financial statements, (3) describing the school's policies and

14

procedures, and, for out-of-district charter schools, (4) showing there is no viable in-district location and providing notice. (Former § 47605, subds. (a), (b).) Most of section 47605's requirements pertain to the *operation* of a charter school, including the requirements (1) to meet statewide standards and conduct pupil assessments (*id.*, subd. (c)(1)); (2) to regularly communicate with parents (*id.*, subd. (c)(2)); (3) to not charge tuition, discriminate or be sectarian (*id.*, subd. (d)(1)); (4) to comply with certain admissions procedures (*id.*, subds. (d)(2), (d)(4)(A)-(C)); (5) to comply with established procedures for handling student records and posting notices (*id.*, subds. (d)(3), (d)(4)(D)); (6) to provide certain information as well as transmit an annual independent financial audit report to the governing school board (*id.*, subds. (g), (m)); and (7) to hire qualified teachers (*id.*, subd. (l)). Former section 47607 also requires that the charter school's students perform well academically. (Former § 47607, subd. (c)(1) [noting that "performance" is "[a]n additional criterion for determining whether to grant a charter renewal"]; see also §§ 52064.5, 47607.2, subd. (a).) Requiring a charter school seeking a renewal to satisfy requirements that are clearly aimed at the school's establishment rather than its ongoing operations not only fails to further the purpose of renewal but could also *hurt* academic performance by requiring schools to stop or interrupt operations if they lack the necessary signatures or if a site within the authorizing district opens up and forces the school to relocate. We decline to interpret the statute in a manner that would lead to such counterintuitive results. (*In re D.B.*, *supra*, 58 Cal.4th at p 946.)

Inglewood offers two further arguments. First, Inglewood contends that a Department of Education regulation excuses the

signatures requirement for renewal petitions (Cal. Code Regs., tit. 5, § 11966.4, subd. (a)(2)(A)), thereby showing that the Department knows how to pick and choose which of former section 47605's requirements are incorporated into the renewal requirements and thereby implying that all other requirements— including the site search and notice requirements—still apply to renewal petitions.  This argument fails for several reasons. Chiefly, this argument does not assist with statutory construction because it does not alter the *text* of the statute; at most, it shows how the Department of Education interprets the statute, yet the Department's refusal to excuse the first-year financials requirement suggests it was not seeking to definitively list what was (and was not) required in a renewal petition.  Second, Inglewood notes that subdivision (j)(1) of former section 47605 only allows for a school to appeal the denial of a petition for "establishment of a charter," so unless *all* portions of section 47605 are made applicable to petitions for renewal, there would be no appeal from a renewal decision.  This ignores that section 47607.5 provides for the appeal of a renewal decision and incorporates the procedures from subdivision (j)(1).  (§ 47607.5.)

## DISPOSITION

The judgment is affirmed.  Lennox and Century are entitled to their costs on appeal.

<u>NOT TO BE PULBISHED IN THE OFFICIAL REPORTS</u>.


_____, P.J.

HOFFSTADT

16

We concur:

_____, J.
 MOOR

_____, J.
 KIM (D.)